STATE v. HAMPTON KENDALL and JOHN VICKERS.

(Filed May 14, 1907).

*Indictment—Murder—Judge's Charge—Evidence—Con-spiracy—Harmless Error—Exceptions and Objections.*

1. The validity of a trial cannot be successfully objected to upon the ground that one of the jurors, in the sound legal discretion of the Court, was permitted to ask a competent question of a witness who was then upon the stand giving testimony.

2. It is not error in the Court below, upon a trial under an indictment for murder, to refuse to instruct, "If the jury find that the deceased was slain by one of the prisoners, and are not satisfied beyond a reasonable doubt as to which one, the issue should be answered, 'Not guilty,'" when there is evidence that one of them may have been present aiding and abetting the other and that the killing may have been done in furtherance of a conspiracy between them.

3. Upon the trial under an indictment for murder, evidence is sufficient to go to the jury on the question of conspiracy which tends to show the association between the parties, the full knowledge of the defendants of the habits and belongings of the deceased, as having ready money; a conversation of one of the defendants in the presence of the other, with a third person, that he would give such person five dollars to get the deceased out in the woods, which was acted upon, the other defendant saying the deceased "said something he was going to make him take back"; that defendants soon followed deceased and witness into the woods, and coming upon them from a different direction, one of the defendants asked the deceased "what he was doing there," and upon reply, "what was that to him," called deceased a vile name; one of the defendants had a pistol; the witness turned her back and ran off and soon heard a pistol-shot; afterwards the deceased was found dead from the effects of a bullet-hole which alone would have caused death and with his pockets turned wrongside out.

4. When upon the trial under an indictment for murder there is an absence of any evidence tending to establish the crime of manslaughter, and the defendant has been convicted of murder, a mistake in the charge of the Court as to manslaughter is harmless error, and the verdict of the jury will not be disturbed on that account.

INDICTMENT for the murder of one Lawrence Nelson, tried before his Honor, *Peebles, J.,* and a jury, at February Term, 1907, of the Superior Court of CALDWELL County.

There was testimony on the part of the State tending to show that deceased, Lawrence Nelson, disappeared from the knowledge and observation of his associates and neighbors in Lenoir, N. C., where he then worked, on 25 September, 1906; and that on 11 December following his dead body was found in the woods, three and one-half miles northeast of the town of Lenoir; that the body had a bullet-hole which entered from the back of the neck; and Dr. Kent, the expert examined, testified that the ball entered from behind, and at the point would have caused his death if deceased had been alive when the wound was received. The body, when found, gave evidence of having been dead for a considerable time, and the left-hand hip-pocket had been turned wrong side out; and it was shown that he was in the habit of carrying his money in that pocket. It was proved that Nelson and the two prisoners had boarded together at the same house, Kendall and deceased staying in the same room; and it was shown that the three were together for several hours the morning of the day he disappeared; that deceased was a man who had ready money, and that the fact was known to both the prisoners; and that on the occasion of the homicide, as claimed by the State, Nelson had shown some money—two twenty-dollar gold pieces and some silver and greenbacks—and none was found on his person when the body was found, as stated.

Onah Grier, a witness for the State, testified, among other things, as follows:

"I saw Kendall and Vickers at the depot that day, too— never saw them before. They were on the yard at the depot. I did not talk with them. Mag Lewis was with them; talked with them. Kendall gave her $5 to get Nelson out in the woods. Vickers said Nelson said something he was going

to make him take back. Money Kendall gave Mag was greenback. Nelson and another boy were standing at the railroad about fifty yards from depot, and Kendall showed us where they were, and we went up to them. Nelson said 'Hello, sweetheart,' to Mag. We went with them up the railroad, and then to a negro restaurant. Nelson and the other man—I don't know who he was—went to the edge of Freedman. Mag and I bought corned beef, crackers, chipped beef and peanuts at the restaurant. We turned to the left from there, crossed a creek on a foot-log, went on another path and turned into an old road. Stopped outside of road, and Mag built a fire and roasted some peanuts. The time was about 5:30 o'clock in the evening. We went back into the road, and the other boy came to us and we all went back to the fire. Nelson cut some pine bushes for us to sit on. We ate peanuts and talked around the fire. We saw Kendall and Vickers coming a different way from the one we came. Kendall asked Nelson what he was doing there, and Nelson asked him what it was to him. Vickers called Nelson a son of a bitch. Vickers had a pistol, and I said to Mag, 'Let's run,' and we ran. The other man who was with Nelson ran. I heard a pistol fire about one hundred yards away. It was about dusk. I never saw the man who ran first any more that night, nor any of the others. We ran down a little hill; don't know what direction. We rambled around all night until four o'clock next morning, then went into a house and asked for something to eat, but did not get it, and then went to a negro restaurant and bought something to eat. * * * We all talked together at the fire. Nelson showed us some money. There were two twenty-dollar gold pieces, some greenbacks and some silver. There were two keys in his purse also. Don't know what he did with the money after showing it to us. He gave me fifty cents. I

never saw him after that.   Next saw Kendall and Vickers at the magistrate's trial."

Defendants denied having anything to do with the killing or knowing anything about it.   Denied any acquaintance with Onah Grier and any and all facts testified to by her which tended to inculpate them, and offered evidence tending to prove an *alibi*.

There was a verdict of murder in the second degree, and from sentence on the verdict the defendants excepted and appealed.

*Assistant Attorney-General Clement* and *W. C. Newland* for the State.

*Lawrence Wakefield, R. Z. Linney, Mark Squires* and *Jones & Whisnant* for the defendants.

HOKE, J., after stating the case: The verdict shows, necessarily, that the jury have rejected the evidence of the prisoners in denial of their guilt and tending to establish an *alibi*, and have accepted the testimony of the State; and this being true, defendants may well feel that they have been mercifully dealt with by the verdict and that every reasonable doubt arising on this testimony has been resolved in their favor.

It is objected to the validity of the trial that one of the jurors was permitted to ask a question of a witness who was then upon the stand giving his testimony.   There is no reason that occurs to us why this should not be allowed in the sound legal discretion of the Court, and where the question asked is not in violation of the general rules established for eliciting testimony in such cases.   This course has always been followed without objection, so far as the writer has observed, in the conduct of trials in our Superior Courts, and there is not only nothing improper in it when done in a seemly manner and with the evident purpose of discovering

the truth, but a juror may, and often does, ask a very perti-
nent and helpful question in furtherance of the investigation.
Authority is also in favor of the Court's action in permitting
the question. *Schaffer v. Railroad,* 128 Mo., 65.

The prisoners further except because the Court refused to
give their prayers for instruction that, "If the jury find that
the deceased was slain by one of the prisoners, and are not
satisfied beyond a reasonable doubt as to which one, their
verdict should be, 'Not guilty.' " This prayer is defective in
that it entirely ignores the view, and the evidence which tends
to support it, that one may have been present aiding and
abetting the other, and that the killing may have been done
in furtherance of a conspiracy between them. This limita-
tion on the position stated in the above prayer is suggested
in *State v. Finley,* 118 N. C., 1162, the authority relied upon
by the prisoners to sustain them in their exception. The
prayer, with the proper modification arising from the testi-
mony, was correctly and fairly given by his Honor in a por-
tion of the general charge, as follows:

"If the State has satisfied you beyond a reasonable doubt
that Lawrence Nelson was unlawfully killed on 25 Septem-
ber, 1906, then it is your duty to go one step further to ascer-
tain whether or not the defendants, or either of them, did the
killing. If the evidence satisfies you beyond a reasonable
doubt that he was killed by one or the other of the defend-
ants, both being present, and you are not satisfied beyond a
reasonable doubt which one killed him, then it would be your
duty to acquit them both, unless the evidence satisfies you
beyond a reasonable doubt that they were there together aid-
ing and abetting or encouraging each other, or that they
formed a conspiracy and got Mag Lewis to entice him out
there in the woods, and went out there in pursuance of that
conspiracy, and one killed him in the presence of the other."

It is further objected in this connection, that there was no

evidence tending to establish a conspiracy, but a reference to the testimony contained in the record affords ample evidence of a common purpose—that one was present aiding and abetting the other, and further discussion of this objection is not required. Objection is further made that the Judge below gave an incorrect charge in the question of manslaughter, as follows:

"Whenever it is admitted or established to the satisfaction of a jury and beyond a reasonable doubt that one man kills another with a deadly weapon, the law presumes that the killing was done with malice and places the burden on the defendant to satisfy the jury beyond a reasonable doubt by the greater weight of the evidence that he killed the deceased under circumstances that would mitigate the crime to manslaughter or excuse it altogether." The error assigned being that matter in mitigation is not required to be proved beyond a reasonable doubt. The position of counsel is correct in this. This Court has repeatedly held that facts and circumstances of this character need only to be proved to the satisfaction of the jury. *State v. Clark,* 134 N. C., 698; *State v. Byrd,* 121 N. C., 684. But the mistake, which was, no doubt, an inadvertence on the part of the trial Judge, does not constitute reversible error, for the reason that it was made in presenting the question of manslaughter, and in no aspect of the testimony is there any feature of manslaughter in the case.

It is a principle very generally accepted that on a charge of murder, if there is any evidence to be considered by the jury which tends to reduce the crime to manslaughter, the prisoner, by proper motion, is entitled to have this aspect of the case presented under a correct charge; and if the charge given on this question be incorrect, such a mistake will constitute reversible error, even though the prisoner should be convicted of a graver crime, for it cannot be then known

whether, if the case had been presented to the jury under a correct charge, they might not have rendered their verdict for the lighter offense. But where there is an entire absence of any evidence tending to establish the crime of manslaughter, and the prisoner has been convicted of murder, a mistake in the charge of the Court as to manslaughter is considered harmless error, and for such error the verdict and judgment will not be disturbed. *State v. White, supra; State v. Capps,* 134 N. C., 622; *State v. Utley,* 132 N. C., 1022; *State v. Foster,* 130 N. C., 666. And so it is here. There is abundant evidence from which the prisoners might have been convicted of murder in the first degree. There are phases of the evidence which justify the verdict as rendered. But assuming that one of the prisoners fired the fatal shot while the other was present, aiding and abetting—and this view the jury have adopted under a correct charge—there is no evidence which tends to reduce the killing to manslaughter or to make out, in their favor, a case of excusable homicide. There is no evidence tending to show that deceased was killed in the anger aroused by a sudden combat into which the prisoners had·unexpectedly entered; none which tends to rebut the malice implied by the law when one has been intentionally killed with a deadly weapon. *State v. Chavis,* 80 N. C., 353; *State v. Peter Johnson,* 48 N. C., 266. The other exceptions are without merit, and the judgment below is affirmed.

No Error.