332 So.2d 601 (1976)
Honorable David U. STRAWN, Petitioner,
v.
STATE of Florida ex rel. Jon Anderberg, Respondent.
No. 47092.
Supreme Court of Florida.
April 21, 1976.
Rehearing Denied June 22, 1976.
Robert L. Shevin, Atty. Gen., and Stephen R. Koons, Asst. Atty. Gen., for petitioner.
Franklin D. Kelley, Public Defender, and Jerrold A. Bross, Asst. Public Defender, for respondent.
ROBERTS, Justice.
This cause is before us on certiorari granted to review the decision of the District Court of Appeal, Fourth District, reported at 307 So.2d 213, which purportedly conflicts with Adkins v. Smith, 205 So.2d 530 (Fla. 1968); State ex rel. Cacciatore v. Drumright, 116 Fla. 496, 156 So. 721 (1934), and State ex rel. Johnson v. Anderson, 37 So.2d 910 (Fla. 1948). We have jurisdiction pursuant to Article V, Section 3(b)(3), Constitution of Florida.
Respondent, Anderberg, was charged by information with the crime of breaking and entering a dwelling with intent to commit a misdemeanor, to-wit: petit larceny. At the conclusion of the State's case, defense counsel called the defendant as a witness. After lengthy examination, cross-examination, and redirect examination of the defendant, defense counsel stated as follows:
"Your honor, if I may at this time, if it please the court, we would allow the defendant to answer any questions that the jury may wish to ask him."
The Court then excused the jury from the courtroom at which time defense counsel explained its position to the court in requesting that the jury ask defendant any questions and stated that this had been done in several other courts in this State and that it is in keeping with finding proof *602 and justice in a court of law. The trial judge remarked that no mention had been made to the court that it was defense counsel's intention to request this and determined that it was a highly inappropriate procedure and that making such request in the presence of the jury so contaminated the trial as to require declaration of a mistrial. In explaining to the jury his reason for declaring a mistrial, the trial judge stated inter alia:
"Obviously, you are not trained in the law. It is quite possible that things that could be of interest to you would be objectionable to the State or to the Defendant. They are placed in a bad position if they have to object to a juror's question, and I am placed in a bad position if I have to sustain it, and they the jurors become adversaries, too. And to ensure that impartiality that is so important to our system, and to ensure the fact that your decision is based only upon the evidence that is admissible in this courtroom, and that you not have any feeling of having been shut off in anything, which you would if someone objected to your question and I had to sustain it. In our system for many centuries, jurors have not been permitted to ask questions, and perhaps some day if we don't need lawyers for the system, then jurors could be permitted to ask any question they liked, and there wouldn't be any need for lawyers in the courtroom, the jurors could investigate it fully and make a decision. But that is not our system. Our system depends on utter impartiality and upon having two trained counsel to ask questions, to object to each other's questions at times, and to ask those questions for the purpose of eliciting admissible evidence."
Subsequently, pursuant to Rule 3.190(b) and Rule 3.190(c)(2), Florida Criminal Rules of Procedure, defendant moved to dismiss the information on the ground that to try defendant again would constitute double jeopardy since the trial court abused its discretion in directing a mistrial with there being no manifest necessity for mistrial. With detailed explanation pertaining particularly to the need for impartial jury, the trial judge denied the motion to dismiss and found that his declaration of mistrial was properly made and, that, therefore, jeopardy had not attached.
Defendant's petition for writ of prohibition to the District Court of Appeal, Fourth District, was granted, and the District Court determined that prohibition was an appropriate remedy and that defendant's contention of double jeopardy was meritorious. Although recognizing two earlier cases which held to the contrary on the prohibition question, the District Court explicated that the more recent decisions of this Court and the District Courts find that under these circumstances prohibition is the proper remedy. As to the second point, the District Court determined that under the circumstances, the declaration of mistrial was not a matter of manifest, urgent or absolute necessity. The District Court determined that the offer by defense counsel to submit his client to juror interrogation made in the presence of the jury could not have been misconduct or in any event could not have been misconduct of such a nature as to prevent the State from receiving a fair trial.
Initially, we remark that the District Court correctly concluded that prohibition was an appropriate and available remedy to respondent under the circumstances. Cf. State ex rel. Williams v. Grayson, 90 So.2d 710 (Fla. 1956); State ex rel. Manning v. Himes, 153 Fla. 711, 15 So.2d 613 (1943); State ex rel. Wheeler v. Cooper, 157 So.2d 875 (Fla.App. 1963).
However, we cannot agree with the District Court's determination that the trial judge erred in declaring a mistrial and that, therefore, jeopardy attached and the charge against respondent should be dismissed. The constitution does not guarantee a defendant a perfect trial (which would be difficult *603 if not virtually impossible), but it does guarantee a fair trial. The trial judge is the man on the ground in full view of the premises. In the conducting of a complicated criminal trial, he finds it necessary to rule many times and, like the referee in an athletic contest, must rule quickly. Generally speaking, he has neither the time, convenient library, nor a staff to research each legal and evidentiary question with which he is confronted in a fast moving trial. It is, therefore, necessary that he be given broad discretion in disposing of such matters.
Sub judice the trial judge was suddenly confronted with a difficult situation created by trial counsel conducting himself in an unorthodox manner. After defense counsel had made the aforementioned remark, the trial judge stated:
"We have had one problem in this court, and it is that you made no mention to me that this was your intention to request this. I regard it as highly inappropriate procedure. Who is to object to a Juror's question? And you're [sic] asking it in the presence of the Jury so contaminates this trial that I am at this time declaring a mistrial."
The defendant should not now be allowed to take advantage of a confusing situation which he and his counsel created. Cf. Adkins v. Smith, supra. There well may have been better ways, after meditation, to dispose of the crisis but the trial judge exercised his discretion to declare a mistrial, and we are unable to say that his decision was an abuse of that discretion. Since it was not an abuse of discretion to enter the mistrial, the plea of former jeopardy is not available to the defendant as a defense.
At this point, we must restate the following relevant portion of our decision in Adkins v. Smith, supra:
"The question here under consideration was discussed by this court in State v. Grayson, Fla., 90 So.2d 710, in which it announced illustrations of urgent or necessary reasons that would justify the entry of an order declaring a mistrial. These reasons were illustrative but not exclusive. We announced the rule there that where a jury is discharged for legally insufficient reasons and without necessity and without the defendant's consent, such discharge would preclude a subsequent trial for the same offense. But in determining what is a legally sufficient reason, the trial court must be armed with discretion since he is conducting the trial and familiar with circumstances, tensions and conditions which may be present in the courtroom. The matter of the trial judge's discretion in such cases was discussed by the Supreme Court of the United States in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901, in which that court affirmed Gori's conviction at his second trial on a charge he had knowingly received and possessed goods stolen in interstate commerce. After his first trial had been terminated by the trial judge's declaration of a mistrial sua sponte and without petitioner's express consent but concedingly in the trial court's exercise of discretion out of regard for petitioner's interest, the court held that the second trial was not double jeopardy, and said: 
"`Since 1824 it has been settled law in this Court that "The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 831, 93 L.Ed. 974; United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146; Keerl v. State of Montana, 213 U.S. 135, 137-138, 29 S.Ct. 469, 53 L.Ed. 734; see Ex parte Lange, 18 Wall. 163, 173-174, 21 L.Ed. 872; Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199. *604 Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Dreyer v. Illinois, 187 U.S. 71, 85-86, 23 S.Ct. 28, 47 L.Ed. 79. It is also clear that "This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * * *," Brock v. North Carolina, 344 U.S. 424, 427, 73 S.Ct. 349, 350, 97 L.Ed. 456, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. See Lovato v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244; cf. Wade v. Hunter, supra. In the Perez case, the authoritative starting point of our law in this field, Mr. Justice Story, for a unanimous Court, thus stated the principals which have since guided the federal courts in this application of the concept of double jeopardy to situations giving rise to mistrials:
"`"* * * We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges under their oaths of office. * * *"'
* * * * * *
"... The New Jersey Supreme Court in an exhaustive treatise on the subject, said: 
"`As we have noted above, the double jeopardy protection does not mean that once an accused has been put on trial regularly, the proceeding must run its ordinary course to judgment of conviction or acquittal. The rule does not operate so mechanistically. If some unexpected, untoward and undesigned incident or circumstance arises which does not bespeak bad faith, inexcusable neglect or inadvertence or oppressive conduct on the part of the State, but which in the considered judgment of the trial court creates an urgent need to discontinue the trial in order to safeguard the defendant against real or apparent prejudice stemming therefrom, the Federal and State Constitutions do not stand in the way of declaration of a mistrial. And this is true even if the conscientious act of the trial judge may be characterized as the product of "extreme solicitude" or "overeager solicitude" for the accused. See, Gori v. United States, supra, 367 U.S., at p. 367, 81 S.Ct., at p. 1525. Moreover, if an incident or circumstance of that nature moves the court to order a mistrial not only to safeguard the right of the defendant to a full and fair trial, but also to protect the right of society *605 to have its trial processes applied fully and fairly in the due administration of the criminal law, there is even less basis for a claim of trespass upon the privilege against double jeopardy... .'"
Cf. U.S. v. Jorn, 400 U.S. 470 at 479-480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Tyson v. State ex rel. Richmond, 240 So.2d 811 (Fla. 1970); Goodman v. State ex rel. Furlong, 247 So.2d 47 (Fla. 1971); State ex rel. Mitchell v. Walker, 294 So.2d 124 (Fla.App. 2, 1974).
During the course of the hearing on motion to dismiss the information on grounds of double jeopardy, the learned trial judge explained his finding that it was manifestly urgent and necessary to terminate the trial, as follows:
"If it is a practice which is one which undermines the jury system of the jury trial, I think the question is really whether or not we want an inquisitorial system or we want a system of jury trials which are conducted by a Judge with the assistance of trained advocates, in accordance with well-developed and historically sound rules of law; particularly, those rules of law that deal with procedure, rights of defendant, and questions of what may or may not be introduced.
"Upon a question of criminal litigations, as evidenced for the consideration by the Jury, the first question that comes to mind when a situation like this was created, is if we assume for the moment that that is the law or would be the law, that either Counsel could subject any witness to the questioning of a jury, who is not trained to the law, has no awareness of the problems of evidentiary procedure.
"First of all, we would have the fact that the other adversary is placed in the position of having to object to the very procedure, that lay people could very well read into that objection something like this: There is something we don't want the jury to know and, therefore, Judge, we don't want to let them ask any questions. We want control. That is the way the system operates and laymen could very well reach that inference, which would be an unfortunate inference in the Court of a jury trial on actions.
"Fairness on objections is also one of the legal rules in obtaining a verdict.
"The second problem that comes up is who is to object to the improper questions of jurors; and, here, we not only move into an area which the Defendant suggested that juries should ask questions, that the State might have some objections to the questions asked, but we also expose the Defendant's right to either open litigation or certainly cross-examination in the process, because the Defendant, after having asked a question like this, if the Court and jury permit them to ask questions, could then very well be faced with the position where they would like to question the Defendant about other crimes that they believe he might have been involved in.
"The Defendant would be subjected to two alternatives then. He might perjure himself, if there were other crimes, or he might not want to give up his right to remain silent and not to testify against himself regarding such other offenses and other crimes.
"In addition, who would object, if the Jury wanted to inquire into hearsay matters? For example, the jury might inquire as to whether or not anybody in the Defendant's family had ever committed a crime or did the Defendant run around with criminals.
"There are lots of other possibilities, and I am suggesting that rather than go through all the horribles, I think the problem as suggested would involve two other points. The jury also would be placed, as mentioned by the State, there is a distinct possibility that the jurors will become advocates. They will lose their ability to remain neutral. If they don't like an answer given or the way *606 it's given or if objections by Counsel to a question asked by a juror, and they take the adverse position established by that objection, and instead of fair and impartial jurors who are not going to form or express any opinions until the entire case has been heard, we would now have some advocates on the jury. They can no longer function as a jury system has been evolved to function.
"Now, it is possible that with the agreement of the trial judge and by approaching him in advance of trial with the thought that such procedure might be employed, and with the agreement of all concerned, that the jurors could be permitted to submit questions in writing and not communicate their questions to each other; those questions would be reviewed by the Court and Counsel, and those questions that could be answered, could be answered in open court by the Judge, after having ruled on any objections that either Counsel might have to the question or the answer which it sought.
"Even that is a pretty far out procedure. I wouldn't take it upon myself without the benefit of a lot of things to induce that kind of procedure into our system, because the very fundamental base of our system is the adversary concept, and this begins to move a little bit away from it. In fact, it moves drastically away from it in the way it was used in this trial, that if we are to move away from an adversary approach and go to an inquisitorial approach, that procedure will have to be adopted by a higher court than my own.
"The question we come to is whether or not introducing this element into the case is sort of a misconduct of Counsel that justifies this Court in declaring a mistrial. Because, I find as I do that this is not a common practice, that it is apparent that that the practice is not provided for by any rule of procedure or rule of law, and one which violates the fundamental precepts of our system and risks the rights of our Defendant, which have always been protected by our system.
"I feel that such misconduct would justify the Court in terminating the trial at that time. I believe it was manifestly urgent and necessary to terminate the trial because I don't believe by any stretch of the imagination those jurors could be convinced that they weren't being deprived of some possible right. I don't think they could be convinced without convincing them that the attorney himself and perhaps even his clients were a party to the improper conduct, nor do I think they could be convinced that from that point forward in the trial, they should disregard what happened and ignore it and go on as they had agreed to try the case.
"The Court, as that time, felt strong enough that the problem was too risky to the sanctity of the trial of the Defendant. If that sort of conduct is to be permitted and it is not grounds for a mistrial, there, again, I will have to have an appellate court tell me, because if they tell me that that is not sufficient in misconduct and that it would be enough to merely tell the jury to ignore the offer, which, on the behavioral sense I mentioned before, I don't think it would be sufficient to instruct them to erase that from their minds after having made that kind of an offer."
Respondent gave absolutely no notice to anyone that he planned to follow this unorthodox course of action. As above stated, the trial judge indicated that he may have entertained jury questioning and set up an appropriate procedure for it which would safeguard the defendant's rights if counsel had given him the opportunity. The holding that the trial judge did not err in declaring a mistrial does not contradict our earlier holdings in Ferrara v. State, 101 So.2d 797 (Fla. 1958) and Shoultz *607 v. State, 106 So.2d 424 (Fla. 1958). In Ferrara, this Court merely stated:
"We think that upon appropriate occasion a trier of fact might be completely justified in propounding a question.
* * * * * *
"We conclude that the procedure should be one to be controlled by the discretion of the trial judge." (Emphasis supplied)
For the foregoing reasons, we find that the trial judge did not abuse his discretion in declaring a mistrial and the plea of former jeopardy is not available to respondent-defendant.
Accordingly, the decision of the District Court of Appeal is quashed and the cause is remanded to the District Court with instructions that it be remanded by them to the trial court with directions that the trial court reinstate the charges and proceed with the trial.
It is so ordered.
OVERTON, C.J., and ENGLAND and SUNDBERG, JJ., concur.
ADKINS, J., dissents with an opinion.
BOYD and HATCHETT, JJ., dissent and concur with ADKINS, J.
ADKINS, Justice (dissenting).
Where a jury is discharged for legally insufficient reason and without necessity and without the defendant's consent, the discharge precludes subsequent trial for the same offense. The trial court is armed with discretion in determining what constitutes a manifest necessity or a "legally sufficient reason" for declaring a mistrial. Adkins v. Smith, 205 So.2d 530 (Fla. 1967).
There are two schools of thought as to the desirability of permitting jurors to ask questions of witnesses. On the one hand there are cases which suggest that trial courts should encourage the practice. Stamp v. Commonwealth, 200 Ky. 133, 253 S.W. 242 (1923); Schaefer v. St. Louis & S. Ry. Co., 128 Mo. 64, 30 S.W. 331 (1895); State v. Kendall, 143 N.C. 659, 57 S.E. 340 (1907); Boggs v. Jewell Tea Co., 266 Pa. 428, 109 A. 666 (1920); Nelson v. State, 513 S.W.2d 496 (Ark. 1974).
On the other hand there are cases which declare that the practice is dangerous and ought not to be encouraged. Therefore, the privilege should only be extended with great caution. State v. Golden, 353 Mo. 585, 183 S.W.2d 109 (1944); People v. Knapper, 230 App.Div. 487, 245 N.Y.S. 245 (1930); White v. Little, 131 Okla. 132, 268 P. 221 (1928). See also Pacific Imp. Co. v. Weidenfeld, 277 F. 224 (1921) (where the practice is strongly condemned).
75 Am.Jur.2d Trial § 935 contains the following discussion on this question:
"The view has been expressed by some courts that the practice of jurors' asking questions in open court during trial should be encouraged on the theory that it is of prime importance for jurors to obtain a fair comprehension of the issues and clarification of any facts which will promote a better understanding of the evidence. Other courts have taken the position that juror questioning should be discouraged, reasoning that laymen are not well qualified to conduct an examination and that a complaining counsel may be placed in the unreasonable tactical position of not being able to raise an objection for fear of alienating the questioning juror.
"The decisions dealing with the propriety of jurors' asking questions in open court during trial have recognized, although usually without any explicit statement to that effect, the general rule that before error can be complained of, it must have been prejudicial to the substantial rights of the party appealing or seeking relief. And even where prejudice has been determined, the curative actions of a trial judge can remedy the error.

*608 "Where it appeared that jurors were invited by counsel for the complaining party to ask questions, or express or implied consent to such practice was given by him, it has been held that no prejudicial error occurred, especially where it otherwise appeared that the rights of the complaining party were not affected."
In People v. Heard, 388 Mich. 182, 200 N.W.2d 73 (1972), the court considered an appeal from a conviction of first degree murder. In his opening statement defendant's counsel informed the jury that they had the right to ask questions of witnesses if they so desired during the course of the trial. He further stated they should write out these questions and that the trial judge had the right to limit the scope of the questions. The prosecutor objected and the trial judge ruled that the jurors had no right to submit questions to the witnesses, the judge saying, among other things, that he never heard of it being done and knew of no authority that it had ever been done. From the colloquy between the court and the attorney, as recited in the opinion, it is apparent that the judge reacted just as the judge in the instant case. The Supreme Court of Michigan said:
"While less than half the states have spoken on this question, all but one have recognized the right of jurors to ask questions. These states include Arkansas (Ratton v. Busby, 230 Ark. 667, 326 S.W.2d 889, 76 A.L.R.2d 751 [1959]); Florida (Ferrara v. State, 101 So.2d 797 [Fla. 1958]); Indiana (Carter v. State, 250 Ind. 13, 234 N.E.2d 650 [1968]); New York (Sitrin Brothers, Inc. v. Deluxe Lines, Inc., 35 Misc.2d 1041, 231 N.Y.S.2d 943 [1962]); Pennsylvania (Boggs v. Jewell Tea Co., 266 Pa. 428, 109 A. 666 [1920]), and Reese v. Pittsburgh, 313 Pa. 32, 169 A. 366 [1933]).
"The trial judge asserted that this had never been allowed in a criminal case, but he was incorrect in this statement. In Carter v. State, supra, defendant had been convicted by a jury of involuntary manslaughter. The trial judge stated in his preliminary instruction that none of the jurors was permitted to ask questions of any of the witnesses for either party, or their attorneys. The Indiana Supreme Court held on appeal that this was error. See, also, cases collected in 31 A.L.R.3d 872. The basic reason underlying the decisions of these courts is that the jurors are the finders of fact and any questions they may ask may help them in reaching their ultimate determination. As the Oklahoma Court of Appeals stated in Krause v. State, 75 Okla. Cr. 381, 386, 132 P.2d 179, 182 (1942):
"`We think it proper that a juror may ask an occasional question where something has been said by a witness which is confusing to the juror for the purpose of clarifying the matter. The extent to which the trial court may allow such questioning by the juror is a matter in the discretion of the court.'
"The prosecutor contends that although many of the states have recognized the right of jurors to ask questions, these states have also discouraged this right. See, for example, Ferrara v. State, supra, and Shoultz v. State, 106 So.2d 424 (Fla. 1958).
"We are dealing here with a very narrow issue. The trial judge in denying the motion misstated that there was no case which permitted this type of questioning. He ruled, erroneously, that under no circumstances in criminal matters, could jurors ask questions of the witnesses. We hold this view was error. The practice of permitting questions to witnesses propounded by jurors should rest in the sound discretion of the trial court. It would appear that in certain circumstances, a juror might have a question which could help unravel otherwise *609 confusing testimony. In such a situation, it would aid the fact-finding process if a juror were permitted to ask such a question. We hold that the questioning of witnesses by jurors, and the method of submission of such questions, rests in the sound discretion of the trial court. The trial judge may permit such questioning if he wishes, and we hold that it was error for the judge to rule that under no circumstances might a juror ask any questions." 388 Mich. at 186-88, 200 N.W.2d at 75-76.
See also People v. Justice, 50 Mich. App. 55, 212 N.W.2d 762 (1973).
It is interesting to note in Ratton v. Busby, 230 Ark. 667, 326 S.W.2d 889, 896 (1959), a civil case seeking damages, an attorney sought a mistrial because "questioning by the Court and the jury had
`* * * unintentionally prejudiced our rights of defense in this case'." The motion for mistrial was overruled. The appellate court upheld this ruling of the trial court, pointing out that the trial had been fairly conducted and the court properly denied the motion for mistrial based on the manner in which a juror examined a witness. The court referred to the annotation in 159 A.L.R. 347. This annotation contains the following statement:
"While some courts have criticized the practice of allowing jurors to examine witnesses, in most cases the practice has either been approved, or the fact that such questions were asked, or permitted by the trial court, has been held not to constitute error. However, the manner of approval, or the language of the courts in concluding that the practice does not constitute error, is not entirely harmonious.
"Some courts have taken the view that in the interest of justice and fair play, the practice should be encouraged rather than discouraged, regarding it as often necessary in order that the jurors obtain a fair understanding of the issues." .. . 159 A.L.R. at 347-48.
"... if a juror examines a witness, either with or without permission of the court, this does not in itself constitute error. However, it must be conceded that even if the practice is permissible, it may be carried out in such a manner or under such circumstances as to warrant the trial court in declaring a mistrial or granting a new trial, or if it fails or refuses to do so, to warrant a reversal by the reviewing court. The determination of the question of prejudice must, of course, largely depend upon the facts in each individual case, but it may be said that, generally speaking, the courts have been reluctant to require a reversal or new trial because of the manner in which a juror examined a witness." 159 A.L.R. at 350.
By the great weight of authority the granting of permission to a juror to ask questions lies within the sound discretion of the court.
There was nothing improper in the request of defense counsel in the case sub judice and the court could have allowed the jury to question a witness without committing reversible error. This Court has recognized the right of the juror to question a witness and frowned upon any effort to hinder this right.
Ferrara v. State, 101 So.2d 797 (Fla. 1958) involved the propriety of a pamphlet entitled "Handbook for Trial Jurors" which was distributed to all the jurors in one of the judicial circuits. The Court generally approved the contents of the pamphlet but made the following observation:
"Reverting to the warning [in the Handbook] that jurors should not interrogate witnesses, we come to our only criticism of the contents of the booklet. We think that upon appropriate occasion a trier of fact might be completely justified in propounding a question." 101 So.2d at 801.
*610 The use of such a pamphlet was again challenged in Shoultz v. State, 106 So.2d 424 (Fla. 1958). This Court referred to its opinion in Ferrara and declined to reconsider the issue. In its opinion the Court said:
"However, we would like to take this opportunity to reaffirm our criticism of the provision of this handbook which admonishes jurors not to question witnesses... . We suggest, however, that the pamphlet herein considered should be modified to eliminate this admonition in order that future criticism may be avoided, for we cling to the view that upon appropriate occasions a trier of fact might be justified in propounding a question." 106 So.2d at 425-26.
The trial judge in his discretion, could have refused to allow the questioning or he could have permitted it. Rather than exercise his discretion in passing upon the propriety of defense counsel's statement, the judge declared a mistrial.
The mistrial was grounded upon a finding by the trial judge that defense counsel's conduct was improper. There can be no improper conduct on the part of an attorney who places the judge in a position to rule upon some question which involves discretion. The judge may be bitterly opposed to the suggested procedure and he may, in his discretion, disallow the procedure, but it is not improper for the attorney to make the request or attempt to follow the procedure.
Where anything is done during the course of a trial which the court could allow in its discretion, there can be no manifest necessity for declaring a mistrial. In determining that the conduct of the attorney was legally sufficient reason for a mistrial, the trial court abused its discretion.
Jeopardy attached and the peremptory writ of mandamus should issue.
BOYD and HATCHETT, JJ., concur.