STATE OF NORTH CAROLINA v. KENNETH DESMOND HOWARD

No. 12A87

(Filed 7 October 1987)

**1. Criminal Law § 87.2— question not leading**

After a rape victim testified that "everybody ran," the prosecutor's question as to whether she meant that "all three of the people that assaulted you before ran" was not an impermissible leading question but was asked to determine whether the victim's use of "everybody" meant the three men, including defendant, who she had testified moments before had assaulted her.

**2. Criminal Law § 99.3— judge's comment not expression of opinion**

The trial judge did not express an opinion on the significance of SBI laboratory reports introduced by defendant when he stated that he did not want each individual juror to take the time to read the reports where the judge permitted defense counsel to read the reports to the jury in their entirety and allowed counsel to pass copies of these exhibits to the jurors for them to review.

**3. Criminal Law § 89.3— prior consistent statements—admission after defense rested**

Although a witness's testimony was more detailed than that of the prosecutrix, it tended to strengthen and add credibility to the testimony of the prosecutrix and was thus admissible for corroborative purposes. Furthermore, the trial court did not err in admitting the corroborative testimony after the defense had rested.

**4. Criminal Law § 87— questioning of witness by juror**

The decision of *State v. Kendall*, 143 N.C. 659, 57 S.E. 2d 340 (1907), that the propriety of juror questioning of witnesses is within the sound discretion of the court, is still the law in this state. However, the better practice is for the juror to submit written questions to the trial judge who should have a bench conference with the attorneys, hear any objections they might have, rule on the objections out of the jury's presence, and then ask the questions of the witness. Furthermore, such questions should ordinarily be permitted only for clarification.

**5. Criminal Law § 87— questioning of witness by juror—objection not required**

When juror questions are asked of witnesses, it is not necessary for counsel to object in order to preserve the issue for appeal.

**6. Criminal Law § 87— questioning of witness by juror—clarification of medical procedures**

The trial court did not err in permitting a juror's direct questioning of a defense witness during the trial where the apparent purpose of the questioning was for clarification of medical procedures used in this case, and the trial judge stopped the questioning after the witness fully clarified her earlier answers regarding the procedures used.

**7. Criminal Law § 102.6— jury argument—failure to call alibi witnesses—burden of proof not shifted**

> The prosecutor's jury argument that defendant did not call as a witness any one of the fifteen persons who were present at the time of the alleged offense because they probably would not back up his story about what happened did not impermissibly shift the burden of proof to defendant.

APPEAL by defendant from judgment imposing sentence of life imprisonment entered by *Battle, J.,* at the 8 September 1986 Criminal Session of Superior Court, DURHAM County, upon a jury verdict of guilty of first-degree rape. Defendant appealed as of right, N.C.G.S. § 7A-27(a), to the Supreme Court. Heard in the Supreme Court 10 September 1987.

*Lacy H. Thornburg, Attorney General, by Thomas H. Davis, Jr., Assistant Attorney General, for the State.*

*Thomas F. Loflin, III, and Ann F. Loflin, for defendant-appellant.*

FRYE, Justice.

Defendant brings forward several assignments of error. Three assignments involve evidentiary rulings made by the trial court that defendant contends are prejudicial to him. Next, defendant contends the trial court committed prejudicial error when it permitted direct questioning of a witness by a juror. Finally, he contends the trial court erred in permitting the prosecutor to note in closing argument that defendant failed to call any alibi witnesses, which defendant contends impermissibly shifts the burden of proof to him.

We hold that defendant received a fair trial free of prejudicial error.

Defendant was charged with first degree rape in violation of N.C.G.S. § 14-27.2. The victim testified that on 22 September 1985 she went to Hood's Food Mart in Durham, North Carolina, for the purpose of asking Mr. Hood for a job. After being told there was no job available the victim returned to her residence where she lived with her boyfriend. She testified that a fight ensued between her and her boyfriend during which the boyfriend struck her. Thereafter she left her residence, went to her mother's home and stayed awhile. The victim testified that on her way back to

her residence she stopped at Hood's Food Mart, which is located between the victim's residence and her mother's house, with the intent of making further inquiry regarding a job. Upon her arrival at Hood's sometime between 9:30 p.m. and 10:30 p.m., the victim testified that she purchased a beer, opened it, and walked outside the store to drink it, whereupon she began to talk with two men whom she knew. She then testified that after about five or ten minutes a car drove up with the defendant, whom the victim knew as "Little Bay," in the back seat.

The victim further testified that sometime later she and other individuals withdrew to a grassy area immediately behind and between Hood's Food Mart and a service station. In that area several men were shooting dice. According to the victim's testimony, she subsequently had to use the bathroom and because there were no facilities available at the service station or at Hood's Food Mart, she used an area behind some bushes. The victim testified that approximately thirty minutes after drinking more beer with the men she needed to use the bathroom again and returned to the bushes.

The victim testified it was during this second trip to the bushes that she was raped. She testified that as she was pulling her panties up she could see the defendant and another man walking up behind her, that someone else grabbed her from behind and defendant pulled her panties off and hit her in the face and as she fought back defendant engaged in forcible intercourse with her. According to the victim's testimony, after defendant got up he held her legs while another man had intercourse with her, after which a third man got on top of her but someone came up and asked the men what they were doing and all three men ran from the scene. The victim also testified that two other men not involved in the rape took her home.

According to the victim's testimony, while at her mother's house the following morning, she telephoned Butner Hospital to see if she could have herself committed there. She testified that she was referred to the Mental Health Center which she telephoned and talked with Jody Foster. During her telephone conversation she told Ms. Foster that she had been raped. Her mother, having heard part of the conversation, called the police who came to the house and escorted the victim to the hospital.

She testified that she later saw defendant on the street and called the police.

Defendant testified in his own behalf. Defendant's testimony was that he was a regular at "Hood's," a name used to describe the grassy area off the pavement behind Hood's Food Mart. He testified that on 22 September 1985 he saw the victim as she sat around drinking with the other men, and that when she went to use the bathroom behind the bushes all the men went and gathered around her, laughing at her and the way she was squatting on the ground. He further testified that someone pushed him into the victim and both fell to the ground. He testified that he did not actually see anyone have sex with the victim and that he did not have sex with her. He testified that he asked the victim to let him take her home because she was drunk, but that the victim said no and slapped him, whereupon he slapped her in return.

The jury returned a verdict of guilty of first-degree rape and defendant was sentenced to life imprisonment.

[1] Defendant contends that prejudicial error was committed when the State was permitted to ask a certain question of the victim, which defendant insists is leading. By this assignment of error defendant argues that because a leading question was allowed it ascribed to defendant an attack on the victim, a material issue in the case.

A leading question has been defined as a question which suggests the answer desired and is a question which may often be answered by a simple "yes" or "no." *State v. Riddick*, 315 N.C. 749, 755, 340 S.E. 2d 55, 59 (1986) (quoting *State v. Britt*, 291 N.C. 528, 539, 231 S.E. 2d 644, 652 (1977)). The traditional North Carolina view is that, as a general proposition, leading questions are undesirable because of the "danger that they will suggest the desired reply to an eager and friendly witness. In effect, lawyers could testify, their testimony punctuated only by an occasional 'yes' or 'no' answer." *State v. Hosey*, 318 N.C. 330, 334, 348 S.E. 2d 805, 808 (1986). However, the fact that a question may be answered yes or no does not make it leading. *State v. Thompson*, 306 N.C. 526, 529, 294 S.E. 2d 314, 316-17 (1982) (quoting *State v. Britt*, 291 N.C. 528, 539, 231 S.E. 2d 644, 652). Whether a question is leading "depends not only on the form of the question but also

on the context in which it is put." *State v. Thompson*, 306 N.C. at 529, 294 S.E. 2d at 317.

Rule 611 of the North Carolina Rules of Evidence provides in pertinent part:

> (c) Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.

N.C.G.S. § 8C-1, Rule 611(c) (1986). Also, it is well settled in this state that a ruling on the admissibility of a leading question is in the sound discretion of the trial court, *State v. Hosey*, 318 N.C. 330, 348 S.E. 2d 805, and these rulings are reversible only for an abuse of discretion. *State v. Riddick*, 315 N.C. 749, 340 S.E. 2d 55.

During the direct examination of the victim the following exchange took place:

Q. Now, when this third person got on you, where was Mr. Howard?

A. I don't know. I don't know.

Q. Now, you said that the third person — after the third person got on top of you, somebody came up and asked what are you guys — what are you all doing out here, what happened at that point?

A. Everybody ran.

Q. You mean all three of the people that had assaulted you before ran?

[DEFENSE COUNSEL]: Objection.

A. Yes.

THE COURT: Overruled.

Considering both the form of the question and the context in which it was put, we do not find it objectionable as a leading question. It is reasonable to assume the question was asked in order to further clarify the statement that "everybody ran." In essence, the prosecutor asked the question to determine whether the witness' use of "everybody" meant the three men, including defendant, whom she had testified moments before had assaulted

her. Thus, the question did not assume any facts not in evidence. Accordingly, we find no error and certainly no abuse of discretion in the trial court's ruling.

[2] Defendant next assigns as error the trial court's remark, in the presence of the jury, that the court did not want each individual juror to take the time to read exhibits which had already been admitted as evidence on behalf of defendant. Defendant contends this was a conveyance of an opinion by the trial court that these exhibits were insignificant.

The relevant statute, N.C.G.S. § 15A-1222, provides that "the judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." However, "[a] remark by the court is not grounds for a new trial if, when considered in light of the circumstances under which it was made, it could not have prejudiced defendant's case." *State v. King*, 311 N.C. 603, 618, 320 S.E. 2d 1, 11 (1984).

During the presentation of defendant's case, defense sought admission of two State Bureau of Investigation (S.B.I.) laboratory reports which defendant contends are consistent with his not being guilty of the crime charged. The trial judge admitted the two exhibits into evidence and stated:

> And then you can pass them after you've read them, if you would like, but I just don't want each individual juror to have to take the time to read all of it.

The trial judge permitted defense counsel to read the reports in their entirety and also allowed counsel to pass copies of these exhibits to the jurors for them to review. Under these circumstances we find no prejudice in the trial judge's statement. *State v. King*, 311 N.C. 603, 328 S.E. 2d 1.

[3] In his third assignment of error regarding evidentiary rulings by the trial judge, defendant contends the trial court erred in allowing the prosecutor to present testimony of a witness (Foster) after the defense had rested. Defendant contends this testimony was not corroborative evidence as held by the trial judge. Instead, defendant argues that the testimony was at great variance from the prior testimony of the prosecutrix. Defendant contends the testimony of witness Foster was therefore prejudicial to him in that it allowed the State to both open and close the

presentation of evidence which unfairly minimized defendant's evidence.

The trial judge has the discretionary power to permit the introduction of additional evidence after a party has rested its case, *State v. Carson,* 296 N.C. 31, 45, 249 S.E. 2d 417, 425 (1978), and can reopen a case for additional testimony after arguments to the jury have begun. *State v. Jackson,* 265 N.C. 558, 559, 144 S.E. 2d 584, 585 (1965) (per curiam). Also, the manner and presentation of evidence is largely within the discretion of the trial judge and his control of the case will not be disturbed absent a manifest abuse of discretion. *State v. Goldman,* 311 N.C. 338, 350, 317 S.E. 2d 361, 368 (1984).

Corroboration is defined as the "process of persuading the trier of facts that a witness is credible." 1 Brandis on North Carolina Evidence § 49 (2d rev. ed. 1982). Prior consistent statements of a witness are admissible as corroborative evidence even when the witness has not been impeached. *State v. Martin,* 309 N.C. 465, 308 S.E. 2d 277 (1983). To be admissible as corroborative evidence, prior consistent statements must corroborate the witness' testimony, *State v. Martin,* 309 N.C. 465, 308 S.E. 2d 277, but the corroborative testimony may contain "new or additional information when it tends to strengthen and add credibility to the testimony which it corroborates." *State v. Kennedy,* 320 N.C. 20, 35, 357 S.E. 2d 359, 368 (1987). *See, e.g., State v. Kim,* 318 N.C. 614, 350 S.E. 2d 347 (1987); *State v. Ramey,* 318 N.C. 457, 349 S.E. 2d 566 (1986); *State v. Riddle,* 316 N.C. 152, 340 S.E. 2d 75 (1986); *State v. Higgenbottom,* 312 N.C. 760, 324 S.E. 2d 834 (1985).

Witness Foster testified that the prosecutrix had told her that she had been raped, several men were involved and that it happened near the victim's house and the store near the victim's mother's house. Defendant contends that this testimony varied substantially from that of the prosecutrix, thus it is not proper corroboration testimony. We have reviewed the testimony of the prosecutrix and the testimony of the witness Foster, and we find no substantial variance between the testimony of the two witnesses. Although Ms. Foster's testimony is more detailed than that of the prosecutrix, it tends to strengthen and add credibility to the testimony of the prosecutrix. *State v. Kennedy,* 320 N.C.

20, 35, 357 S.E. 2d 359, 369. The testimony was thus admissible for corroborative purposes.

In his next assignment of error, defendant contends the trial court erred in permitting a juror to directly question his witness during the trial in the presence of other jurors. Defendant argues that the juror's questions relating to a particular blood testing method used shows that the juror abandoned his appearance of impartiality and became involved as an advocate rather than as an impartial finder of fact.

The issue of jurors asking questions of a witness at trial does not occur with great frequency. It appears there is only one North Carolina case addressing the propriety of jurors' direct questioning of witnesses. *State v. Kendall*, 143 N.C. 659, 57 S.E. 340 (1907). In *Kendall*, defendant challenged the validity of a trial in which one juror was permitted to ask questions of a testifying witness. In finding no error, this Court stated:

> There is no reason that occurs to us why this [juror questioning of a witness] should not be allowed in the sound discretion of the Court, and where the question asked is not in violation of the general rules established for eliciting testimony in such cases. This course has always been followed without objection, so far as the writer has observed, in the conduct of trials in our Superior Courts, and there is not only nothing improper in it when done in a seemly manner and with the evident purpose of discovering the truth, but a juror may, and often does, ask a very pertinent and helpful question in furtherance of the investigation.

*Id.* at 663, 57 S.E. at 341. Several courts agree with the rationale of *Kendall*, in that the propriety of juror questioning of witnesses is within the sound discretion of the trial court. *See, e.g., United States v. Witt*, 215 F. 2d 580 (2d Cir.), *cert. denied*, 348 U.S. 887 (1954); *Carter v. State*, 250 Ind. 13, 234 N.E. 2d 650 (1968); *Sparks v. Daniels*, 343 S.W. 2d 661 (Mo. App. 1961); *Krause v. State*, 75 Okla. Crim. App. 381, 132 P. 2d 179 (1942).

Alternatively, there are several arguments expounded by various courts as to why jurors should not be permitted to question witnesses directly. One is that jurors are not familiar with the rules of evidence and therefore may ask improper and preju-

dicial questions before they can be stopped. *State v. Williamson,* 247 Ga. 685, 686, 279 S.E. 2d 203, 204 (1981). Correlated to this argument is the fact that counsel, whose client is being harmed by possibly prejudicial testimony, is placed in the untenable position of having to choose between not objecting and letting the possibly prejudicial testimony in or objecting to the question and risking offending the juror. *Stinson v. State,* 151 Ga. App. 533, 536, 260 S.E. 2d 407, 410 (1979). However, the South Carolina Court apparently has resolved the latter dilemma by holding that when a court, in its discretion, allows direct questioning by a juror of a witness, "[t]he trial judge should meticulously endeavor to make it unnecessary for offended counsel to interpose an objection to a juror's question in its presence." *State v. Barrett,* 278 S.C. 414, 419, 297 S.E. 2d 794, 796 (per curiam), *cert. denied,* 460 U.S. 1045 (1982).

[4, 5] We are aware of the possible prejudice that may arise by a juror questioning a witness directly. Counsel should not have to be put into the untenable position of having to choose between not objecting to an incompetent or prejudicial question, thus letting the testimony in, or objecting to the question with the potential result of offending a juror. Therefore, we hold that, while *Kendall* is still good law in this state, the better practice is for the juror to submit written questions to the trial judge who should have a bench conference with the attorneys, hearing any objections they might have. The judge, after ruling on any objections out of the presence of the jury, should then ask the questions of the witness. Questions should ordinarily be for clarification and the trial judge should exercise due care to see that juror questions are so limited. In any event, when juror questions are asked of witnesses, it is not necessary for counsel to object in order to preserve the issue for appeal.

[6] In the case *sub judice,* defendant's first witness, a registered nurse, was testifying that she had seen the prosecutrix in the emergency room on the morning after the alleged rape and had filled out a rape trauma sheet recording the results of the emergency room examination. The witness then read several pages of the rape trauma sheet and the emergency room department sheets she had filled out while examining the prosecutrix. During the course of her reading, she stated that at the time of the examination the prosecutrix had an ETOH level of 85. At this

point the court interjected the following question: "What is ETOH?" to which the witness replied: "Alcohol level in the blood stream at that time."

Immediately following the court's question regarding the definition of ETOH, one of the jurors asked six questions regarding the technique used in drawing the blood sample for the alcohol level determination. The following questions by the juror were permitted by the trial court:

Q. This is the question I was asking this morning. The question is, when they took the blood from this lady, did they use — did they take it specifically for ethnol, the amount of ethnol in her blood?

A. Yes.

Q. Which is referred to as alcohol?

A. Excuse me?

Q. Which is referred to as alcohol.

A. Yes, sir.

Q. And it was taken specifically for this reason?

A. Yes, sir.

Q. And was it done by lobotomy [sic]?

A. No, I drew the blood myself.

Q. And what kind of swab did you use to take it?

A. It's sort of hard to remember. I do believe you have a question as to whether the isopropyl alcohol can change the content of the blood count. A study was done that says that it doesn't. So if I drew a blood level and I used the alcohol, which is isopropyl, at that time, I can't be for sure, but I believe I used the isopropyl at that time, pad to wipe off the spot for the blood.

Q. Is there another procedure or another wipe that you can use other than alcohol?

A. To my knowledge, during the three years that I was in the emergency room, we used the same thing. There is

another thing you can use but we generally used the isopropyl alcohol pads.

THE COURT: All right. I believe we better continue with the attorney.

Defendant contends the above questioning by the juror tended to impugn the validity of the particular test used and amounted to a cross-examination by the juror. Moreover, defendant argues, this "cross-examination" of a defense witness enabled the juror to become an advocate, rather than an impartial finder of fact. In examining defendant's contention we must review the juror's questioning in context. Prior to the above exchange, the witness was reading, in medical terms, notes she had taken while she was examining the prosecutrix. This medical terminology was difficult for the judge to understand, as evidenced by the record, and the questions by the juror were proper since the apparent purpose of the questioning was for clarification of the medical procedures used in this case. We note that Judge Battle stopped the questioning after the witness fully clarified the earlier answer regarding the procedures used. We find the trial judge exercised due care to see that the juror's questioning was limited to clarification of the witness' testimony and we find no error in his ruling.

[7] In his final assignment of error, defendant contends that his constitutional right of due process was violated when the trial judge permitted the prosecutor, in closing argument, to note the failure of defendant to call alibi witnesses. Defendant contends that this left the jury with the likely impression that the burden of proving his innocence was on defendant.

In closing arguments a prosecutor may not comment on the failure of a defendant to testify at trial. *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976). However, it is permissible for the prosecutor to bring to the jury's attention "a defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State." *State v. Mason*, 317 N.C. 283, 287, 345 S.E. 2d 195, 197 (1986). This Court has held that a prosecutor's comment noting the failure of a defendant to produce any alibi witnesses does not constitute an impermissible comment on the defendant's failure to testify. *See, State v. Young*, 317 N.C. 396,

346 S.E. 2d 626 (1986); *State v. Jordan*, 305 N.C. 274, 287 S.E. 2d 827 (1982).

In the case *sub judice*, the prosecutor, in his closing argument, argued to the jury that, in its deliberations, it could consider not only evidence offered by the defendant but also evidence that was not offered by the defendant and should consider the fact that there were fifteen others present at the time of the alleged offense and defendant did not call any one of them as witnesses. The prosecutor further argued that defendant did not call them as witnesses because they probably would not back up his story about what had happened. After reviewing the prosecutor's closing argument we fail to see any comment that intimates that the defendant had the burden of proving his innocence.

Admittedly, it is well-settled law that the burden of proof remains with the State regardless of whether a defendant presents any evidence, and it is well-settled law that a defendant need not testify, a fact which may not be commented on by the prosecutor. However, in the instant case defendant did testify at trial and the statements defendant takes exception to "amount merely to the prosecutor's comment on the defendant's failure to produce witnesses to corroborate the truth" of defendant's testimony. *State v. Young*, 317 N.C. 396, 415, 346 S.E. 2d 626, 637. In this there is no error.

Defendant received a fair trial, free from prejudicial error.

No error.