STATE OF NORTH CAROLINA
v.
ADRIAN SANDERS DESMORE
No. COA08-762.
Court of Appeals of North Carolina.
Filed January 20, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Richard G. Sowerby, for the State
William B. Gibson for Defendant-Appellant.
McGEE, Judge.
Adrian Sanders Desmore (Defendant) was indicted for robbery with a dangerous weapon on 18 October 2004. The State presented evidence at trial on 13 November 2007, which tended to show the following: Paul McCree (McCree) was working as an assistant manager at a Food Lion store in Charlotte, North Carolina on 4 June 2004. Shortly after 10:00 p.m., McCree walked out to the parking lot to retrieve a shopping cart. On his way back to the store, he was confronted by a slender black male wearing a dark ski mask and gloves, and holding a pistol. The man pointed the pistol at McCree and ordered him to go back inside the store. Once inside, he ordered McCree to lock the door. The man told McCree that he"wanted all of the money." McCree, along with Jennifer Genten (Genten) and Janet Caratelli (Caratelli), who were working in the store, went with the man into the office. Once inside the office, the women handed the man money from the cash drawer. After the women gave him the money, the man pointed to a drawer underneath the cash drawer, which Caratelli described at trial as being where the store "kept the big amounts." Caratelli further testified that the man "pointed down there like he knew where it was kept."
The man then ordered McCree to go to another part of the office and retrieve the security video. McCree tried to comply, but was not able to get the tape out of the recorder. McCree and the man then returned to the office. At that point, McCree noticed that the man's pistol appeared to be jammed, so McCree grabbed the man by the wrist. The two scuffled, with McCree pulling the man out of the office and over to the cash registers near the front of the store. McCree succeeded in taking the pistol away from the man and struck him on the head with the pistol. At that point, the man stated, "I give up now." McCree and the man wrestled a little longer before the man pulled away and ran out the back door, leaving the money scattered all over the floor. Caratelli called 911 and the police arrived approximately five minutes later. Police secured the pistol left behind by the man and took statements from the store's employees.
At trial, Caratelli testified that she recognized the voice of the man as being that of Adrian Desmore, who had previously worked as a bagger with her on the second shift. Caratelli alsoidentified Defendant at trial. The pistol recovered by police, as well as its magazine, were checked for fingerprints, but none were found. DNA testing was conducted on biological materials found on the pistol grip and from buccal swabs later taken from McCree and Defendant. John Donahue, Chief Criminologist with the Micro Analysis Section of the Charlotte-Mecklenburg Police Department, testified that the DNA profile he got from the handle of the pistol matched the profile for Defendant, but it did not match the profile for McCree. Donahue further testified that the probability that an "African/American person . . . would have the same [DNA] profile as to what was found on the gun is approximately one in 4.2 Quintillion."
Defendant was convicted as charged and was sentenced to a term of sixty-four to eighty-six months in prison. Defendant appeals.
Defendant first argues that the trial court erred by denying his motions to dismiss for insufficiency of the evidence. Defendant argues that the evidence does not support the essential element that he "carried away" the property.
To survive a motion to dismiss, the State must present substantial evidence of each essential element of the charged offense. State v. Cross, 345 N.C. 713, 716-17, 483 S.E.2d 432, 434 (1997). "'Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Id. at 717, 483 S.E.2d at 434 (quoting State v. Olson, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992)). When reviewing the sufficiency of the evidence, "[t]he trial court must consider suchevidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." State v. Patterson, 335 N.C. 437, 450, 439 S.E.2d 578, 585 (1994) (citing State v. Vause, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991)).
The elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." State v. Call, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998) (citing N.C. Gen. Stat. § 14-87 (1994)); State v. Small, 328 N.C. 175, 400 S.E.2d 413 (1991). In the case before us, McCree testified that Defendant had a pistol, demanded the store's money, and that Genten and Caratelli handed Defendant the money. After Defendant had taken the money, McCree observed that the pistol was jammed and wrestled it away from Defendant, at which point the money fell on the floor and Defendant ran away. It is reasonable to infer from the evidence that, prior to McCree's taking the gun away from Defendant, Defendant had possession of the store's money. "'The least removal of an article, from the actual or constructive possession of the owner, so as to be under the control of the felon, will be a sufficient asportation.'" State v. Walker, 6 N.C. App. 740, 743, 171 S.E.2d 91, 93 (1969) (citation omitted). "The fact that the property may have been in [the] defendant's possession and under his control for only an instant is immaterial if his removal of the rings fromtheir original status was such as would constitute a complete severance from the possession of the owner." Id. We conclude from the evidence presented, when taken in the light most favorable to the State, that a reasonable jury could conclude that Defendant possessed the store's money and thus committed the offense of robbery with a dangerous weapon. Accordingly, we overrule Defendant's assignment of error.
Defendant next argues that the trial court abused its discretion by allowing jurors to ask questions of the witnesses without following the "better procedure" recommended by the North Carolina Supreme Court. We are not persuaded.
"'The propriety of juror questioning of witnesses is within the sound discretion of the trial court.'" State v. Elliott, 360 N.C. 400, 413, 628 S.E.2d 735, 744 (quoting State v. Howard, 320 N.C. 718, 725, 360 S.E.2d 790, 794 (1987), cert. denied, ___ N.C. ___, 166 L. Ed. 2d 378 (2006)). In Howard, our Supreme Court stated that
the better practice is for the juror to submit written questions to the trial judge who should have a bench conference with the attorneys, hearing any objections they might have. The judge, after ruling on any objections out of the presence of the jury, should then ask the questions of the witness. Questions should ordinarily be for clarification and the trial judge should exercise due care to see that juror questions are so limited. In any event, when juror questions are asked of witnesses, it is not necessary for counsel to object in order to preserve the issue for appeal.
Howard, 320 N.C. at 726, 360 S.E.2d at 795. Nevertheless, despite our Supreme Court's articulation of "the better practice[,]" it is the defendant's "burden [to] establish[] that the jurors' questions and [the witnesses for the State's] responses were so prejudicial that they resulted in an adverse verdict[.]" State v. Jones, 158 N.C. App. 465, 471, 581 S.E.2d 107, 110 (2003). Moreover, Defendant bears the burden of proving that the outcome of the trial would have been different but for the alleged error. Id. In this case, the trial court informed the jurors that if there were any "substantial questions" they wanted the trial court to ask the witnesses, the jurors could submit their questions to the trial court in writing. The trial court asked that the jurors reserve their questions "for what is important only" and stated that the questions would be subject to objection. The trial court also asked the jurors to only submit questions that were "relevant to the issues before the Court" and that were "not biased" to one side or the other. Finally, the trial court told the jurors that "there are some questions . . . I will not ask in the form that you have written it because of the Rules of Evidence or for some other reason." During the trial, the jurors submitted questions to the trial court, and the trial court asked witnesses the questions on six different occasions. The trial court failed to hold bench conferences on four of the six questions. Thus, the trial court failed to follow the "better practice" established by Howard. However, we conclude that Defendant has failed to carry his burden of establishing that the jurors' questions and the witnesses' responses were so prejudicial that they resulted in an adverse verdict, particularly in light of the other substantial evidence presented as to Defendant's guilt. We hold that the trial court did not abuse its discretion.
No error.
Judges HUNTER and JACKSON concur.
Report per Rule 30(e).