John MAY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1955.

W. W. Burchett, Joseph P. Tackett, A. J. May, Clifford B. Latta, Prestonsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., W. Owen Keller, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

John May was indicted in the Floyd Circuit Court at its January term, 1955, charged with the offense of assault and battery on the person of Burnis Martin. From a judgment of conviction and a fine assessed against him of $1,000, May moves for an appeal.

On the day the altercation arose between these two men, Martin was Commonwealth's attorney of the 31st Judicial District, composed solely of Floyd County, and May was justice of the peace of Magisterial District No. 2 in that county. The testimony discloses there had existed an antagonism of long standing between them, and each, on prior occasions, had sought to embarrass the other whenever their paths crossed.

According to Martin, he was in the office of the circuit court clerk making inquiry as to whether May had satisfied an alleged "cold" check he had given the clerk in payment of fines and forfeitures he had collected. It was his intention, he asserted, to submit the matter to the grand jury if the check had not been honored. While talking to the clerk on the subject, he was struck four or five times in the back of the head without his knowing anyone had come up behind him and without a word having been spoken. After he had been knocked around the corner of a table before which he had been standing, he recognized his assailant as May, and he then heard the latter say: "By God, I'll knock the hell out of you." He afterwards went to the county judge and procured a warrant for May's arrest. The clerk gave substantially the same version of the affray. The clerk added, however, Martin had said nothing derogatory about May in his presence and he had made no effort to return the assault.

May, testifying for himself, stated that when he walked into the clerk's office Martin and the clerk were discussing the check. As he entered, he claimed Martin was accusing the clerk of covering up for him. This excerpt from his testimony described what followed: "I said: 'Burnis, I have the check in may pocket, I have already paid it,' and I reached in my coat pocket,

like that (demonstrating), and pulled the check out and showed it to him, and he said something else. Of course, it just flew all over me when he said that, and he was looking at me when I went to hit him." He further stated he hit Martin two or three times and "didn't use nothing but my fist."

When this case was called for trial a motion to remove Martin as Commonwealth's attorney was filed but overruled by the court. The trial then proceeded with Martin as prosecuting witness and as Commonwealth's attorney. We believe this dual capacity in which Martin acted was perhaps permissible. However, looking at the whole proceeding objectively, we have a strong feeling that another attorney should have tried the action, in order to remove the self-interest factor and thereby reduce to a minimum the display of passion and prejudice that can scarcely be kept in abeyance where, as here, the same person was the victim of the offense and the prosecutor.

Three grounds are relied upon in seeking a reversal of the judgment: (1) That the fine of $1,000 was unreasonable and excessive; (2) that the court erred in failing to instruct the jury on breach of peace; and (3) that the argument of the Commonwealth's attorney to the jury was improper in that it created passion and prejudice in the minds of the jurors.

We are of the opinion that the first contention is without merit. The crime committed can hardly be considered a mere assault upon an individual. If we accept as true the testimony of Martin and that of the circuit court clerk, as no doubt the jury did, the assault was an unwarranted interference with a public official at a time when he was engaged in the performance of his duty, and this fact alone makes the offense a far more serious one than a mere resort to fisticuffs by two private citizens. Furthermore, gravity is added to the offense because May's attack was directed at one of the most important offices in the Commonwealth, at one whose duty it is to uphold law and order. Because of these reasons and because Martin testified he suffered

much embarrassment and humiliation personally as a result of the incident we cannot say that the fine was unreasonable or excessive.

■ The second objection asserting error for not instructing the jury on breach of the peace is likewise untenable. An assault has been defined as "any attempt or offer with force or violence to do a corporeal hurt to another, whether from malice or wantonness, with such circumstances as denote at the time an intention to do it coupled with the present ability to carry such intention into effect." See Hixson v. Slocum, 156 Ky. 487, 161 S.W. 522, 51 L.R.A.,N.S., 838. A battery is "an assault whereby any force, however slight, is actually applied to the person of another, directly or indirectly." See Gregory's Kentucky Criminal Law Procedure and Forms, Section 131, page 148. Assault and battery constitute a common-law misdemeanor that formerly was punishable by fine or imprisonment, or both, in the discretion of the jury. Cornelison v. Commonwealth, 84 Ky. 583, 2 S.W. 235. However, in 1950 the Legislature limited the maximum punishment for an offense of this kind by enacting KRS 431.075, which reads: "Any person convicted of a common-law offense the penalty for which is not otherwise provided by statute shall be imprisoned in the county jail for a term not exceeding twelve months or fined a sum not exceeding five thousand dollars or both."

■ For a breach of the peace one may be fined "not more than one hundred dollars or imprisoned for not less than five nor more than fifty days, or both." See KRS 437.010. A breach of the peace is incident to, and embraced in, every assault and battery, March v. Commonwealth, 12 B.Mon. 25, and a conviction or acquittal for breach of the peace is a bar to a prosecution for assault and battery. See Commonwealth v. Foster, 3 Metc. 1; Commonwealth v. Hawkins, 11 Bush. 603, and Commonwealth v. Gill, 90 S.W. 605, 28 Ky.Law Rep. 879. Where the indictment is for assault and battery it is thus apparent there can be no basis whatsoever to justify an instruction on breach of the peace, since the punishment embodied in the lower court's assault and battery charge to the jury always covers the punishment which can be inflicted had a breach of the peace instruction been actually given. In view of the foregoing, this Court has laid down the rule that breach of the peace is not a degree of the crime of assault and battery. See Bottom v. Commonwealth, 98 Ky. 17, 32 S.W. 140; Cornelison v. Commonwealth, supra.

■ In this case there was an actual assault with force and violence, as has been shown, and the trial judge did not err when he refused to instruct on breach of the peace.

The third ground urged for reversal concerns the argument of the Commonwealth's attorney in his closing speech to the jury. Complaint is leveled at three separate portions of the argument which the lower court allowed to be made over the objection and exception of May. In addition, at the conclusion of the whole speech, May by counsel moved to set aside the swearing of the jury and continue the case. This motion was overruled, to which an exception was taken.

The first statement was: "Why, every time a county attorney or Commonwealth attorney starts to look into some records for the welfare of the county * * * No, those juries will let them beat upon me; they will assault me, and those juries may, by their verdicts, encourage other incidents of like nature. Ladies and gentlemen, I say this is a test case and if you get by with this one, there will be no investigations in this county, there will be no duties performed by the Commonwealth attorney who is under oath to do them."

The second statement was: "Of course, as this jury can readily recognize, there might be some others involved in this besides Mr. May, because the jury knows sometimes a man don't even have to pay his own fine. Sometimes it don't cost him a dime. Somebody would pay his fine for him and be glad to."

The third statement was: "If you can assault the Commonwealth attorney and get by with it by paying a little fine, why, in a

little while you can assault a bigger official than that and get by with it. You weigh your responsibilities."

 The first and third statements were, first of all, ranting pleas for personal revenge and certainly served to plant in the minds of the jury the idea that justice can only be upheld by harsh measures of punishment rather than by a conviction arrived at after a sober consideration of all the evidence. Furthermore, coercion is implicit in the language contained in the latter part of the first statement, because the jury was told to inflict a substantial penalty upon May, otherwise "there will be no duties performed by the Commonwealth attorney" in the future in any case. We believe such statements were so highly inflammatory that they had no place in this trial.

 When Martin told the jury in the second statement that whatever fine might be assessed against May some one would come to his rescue and assume the payment of it, he went completely outside the record. Such an insinuation of personal knowledge voiced by a Commonwealth's attorney carries with it much weight against the accused. In any light we might choose to regard this assertion, we can only conclude that it was inexcusable, and we believe it was so damaging in its consequences that it, considered alone, warrants a reversal of this case.

 We have written many times that it is the duty of the Commonwealth's attorney in his argument before a jury to make no statement that builds up prejudice in their minds. Moreover, he should refer only to evidence heard from the witness stand. See East v. Commonwealth, 249 Ky. 46, 60 S.W.2d 137, and the numerous cases cited therein. In Bowling v. Commonwealth, Ky., 279 S.W.2d 23, 24, our most recent case on the subject, we set forth what we conceive the responsibility of the Commonwealth's attorney to be in his conduct of a criminal case, and we believe that responsibility was not adhered to here. We said in that case, " * * * it is the obligation

of the prosecuting attorney to conduct himself with due regard to the proprieties of his office and to see that the legal rights of the accused, as well as those of the Commonwealth, are protected. It is his duty to prosecute but not persecute. He should endeavor to see that justice is meted out and that the accused is dealt with fairly. Above all, there is an obligation that truth and right shall prevail."

Wherefore, the motion for an appeal is sustained, the appeal is granted, and the judgment is reversed for further proceedings consistent with this opinion.