STATE OF NORTH CAROLINA v. JAMES EDWARD (JIMMY) BRITT

No. 151

(Filed 31 January 1977)

**1. Criminal Law § 55— blood alcohol level — no foundation for testimony**
     The trial court in a first degree murder prosecution did not err in refusing to allow an expert in pathology to testify concerning

State v. Britt

the blood alcohol level of the victim, since there was no evidence which would lay a sufficient foundation for such testimony.

2. **Criminal Law § 87; Witnesses § 1— witness not on list furnished defendant — testimony properly allowed**

Defendant was not prejudiced where the trial court allowed a witness whose name was not on a list furnished to defense counsel to testify; and, while it would have been the better practice to question the members of the jury as to any relationship with the witness at the time he was called to testify, defendant was not prejudiced by the omission of such inquiry.

3. **Criminal Law § 89— prior consistent statements — admissibility for corroboration**

Prior consistent statements of a witness are admissible to strengthen his credibility, but such statements are admissible only when they are in fact consistent with the witness's testimony; however, if the previous statements offered in corroboration are generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible.

4. **Criminal Law § 89— corroborating testimony — slight variations**

The trial court in a first degree murder prosecution did not err in allowing into evidence testimony of a corroborating witness, though such testimony was slightly different from that of the original witness.

5. **Criminal Law § 93— order of proof — discretionary matter**

Defendant failed to show abuse of discretion by the trial court in allowing three of the State's witnesses to testify in rebuttal rather than during the State's case in chief.

6. **Criminal Law § 102— district attorney's jury argument — characterization of defendant — no error**

In a first degree murder prosecution, the trial court did not err in allowing the district attorney, after reciting the evidence introduced by the State, to state in his jury argument that defendant was a "cold-blooded, deliberate murderer, regardless of what your decision in this case is," and that defendant was "guilty as sin and I'm asking you to put him out of the shooting business," since it would appear that the district attorney's opinion was based solely upon evidence at the trial from which his inferences and conclusions could legitimately be inferred.

7. **Criminal Law § 102— self-defense — district attorney's jury argument — propriety**

The district attorney in a first degree murder case did not improperly argue self-defense to the jury but instead explained that under the law applicable to the case self-defense was not an issue.

8. **Criminal Law § 87— leading question defined**

A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no; however,

simply because a question may be answered yes or no does not make it leading, unless it also suggests the proper response.

**9. Criminal Law § 87— 13 year old witness — leading questions proper**

The trial court in a first degree murder case did not abuse its discretion in permitting leading questions to be used to elicit testimony from the 13 year old son of the victim who was an eyewitness to the shooting of his father.

**10. Constitutional Law § 30— homicide prosecution — loss of knife by State — no denial of due process**

In a first degree murder prosecution defendant failed to show how the loss by the State of a knife with which deceased allegedly stabbed defendant amounted to a denial of due process, since at no time during trial did defendant ever raise the issue of the loss of the knife; defendant cross-examined the witnesses who saw the knife on the evening of the murder and could have elicited any desired information from them; and it was unclear of what relevance the knife would have been in the case, since self-defense was not an issue.

**11. Constitutional Law § 30; Criminal Law § 102— failure of court to remove district attorney — no denial of due process**

Defendant was not denied due process of law by the trial court's failure to remove the district attorney from prosecution of the case, even though the case had been tried three times before with the same district attorney, and the Supreme Court had previously reversed defendant's conviction for overzealous conduct on the part of the district attorney, since there was no showing of misconduct in this trial.

**12. Constitutional Law § 34; Criminal Law §§ 26, 128— mistrial upon defendent's motion — double jeopardy plea improper**

An order of mistrial in a capital case will not support a plea of former jeopardy if the mistrial is entered upon defendant's motion; therefore, defendant was not subjected to double jeopardy where, in an earlier trial, the presiding judge declared a mistrial based upon two incidents affecting the jury and upon defendant's motion.

**13. Constitutional Law § 37; Criminal Law § 26— appeal from conviction — waiver of protection against reprosecution**

When a defendant seeks a new trial by appealing his conviction, he waives his protection against reprosecution; therefore, defendant was not subjected to double jeopardy where he appealed twice and was awarded new trials for errors occurring in the earlier trials.

**14. Constitutional Law § 30— delay caused by defendant's appeals — no denial of speedy trial**

Defendant who was charged with a murder committed on 3 May 1973 was not denied his right to a speedy trial where delays were caused by his appeals, not by any arbitrary or oppressive delay by the prosecution.

**15. Criminal Law § 88— cross-examination — limitation proper**

The trial court in a first degree murder prosecution did not err in limiting defendant's cross-examination of the victim's son concerning conduct of the victim toward his wife on occasions prior to the homicide when defendant was not present.

**16. Constitutional Law § 36; Homicide § 31— first degree murder — life sentence substituted for death penalty**

The death sentence imposed in this first degree murder prosecution is vacated and a sentence of life imprisonment is imposed in lieu thereof.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Braswell, J.,* at the 3 May 1976 Session of BLADEN Superior Court.

Defendant was tried and convicted upon an indictment, proper in form, for the first degree murder of Clarence Black-well committed on 3 May 1973. A sentence of death was imposed.

The State introduced evidence tending to show that several days prior to 3 May 1973, H. L. Wiggins sold defendant a .357 magnum pistol. Thereafter, during the evening of 3 May 1973, defendant approached Deputy Sheriff Carl Herring and offered him $50.00 to put Clarence Blackwell in jail. Mr. Herring refused the offer and defendant stated to him that "he could take care of [Blackwell] if [Deputy Herring] couldn't . . . . "

Decedent's son, David Blackwell, testified that his father and mother were not living together on 3 May 1973. During the evening of 3 May 1973, David was awakened by a noise in the living room of his house. He walked from his bedroom to the living room where he saw his father (the decedent) and defendant fighting. After he watched the fight for approximately five or ten seconds, his father arose and began running toward the front door. At this time, David saw defendant pick up a pistol and shoot his father in the back. His father then went out the front door. David further testified that after defendant fired the shot, defendant picked up a shotgun and left the house.

Decedent's body was found lying face down in his front yard. The location of his feet was approximately eighteen inches from the bottom of the front steps of the house. A .357 magnum pistol containing five live rounds and one spent round was later found inside defendant's house. The pathologist who performed

the autopsy upon decedent's body stated that the bullet entered the lower part of the decedent's back. In his opinion, death was caused by hemorrhage secondary to the bullet wound.

Defendant did not testify, but offered the testimony of several persons. In general, the witnesses' testimony tended to show that they had seen decedent on the evening of 3 May 1973 and that they had seen Mrs. Blackwell's house on that night.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Archie W. Anders for the State.*

*William S. McLean for defendant appellant.*

MOORE, Justice.

[1]  Defendant first contends that the trial court erred in failing to allow into evidence the blood alcohol level of the deceased. Defendant admits that the autopsy report and related reports (including a toxicology report) identified by Dr. Marvin Thompson, an expert in pathology, were not offered into evidence at trial by either the State or defendant. Defendant only assigns as error the failure of the court to allow the oral testimony of Dr. Thompson relating to the blood alcohol level of the deceased.

As stated in *Robinson v. Insurance Co.*, 255 N.C. 669, 672, 674, 122 S.E. 2d 801, 803, 804 (1961):

> "[A]s to whether or not a blood alcohol test is admissible depends upon a showing of compliance with conditions as to relevancy in point of time, tracing and identification of specimen, accuracy of analysis, and qualification of the witness as an expert in the field. In other words, a foundation must be laid before this type of evidence is admissible. *S. v. Willard* [241 N.C. 259, 84 S.E. 2d 899 (1954)]. Moreover, it should be made to appear that the blood was taken from the body of the deceased before any extraneous matter had been injected into it. *McGowan v. City of Los Angeles,* 100 Cal. App. 2d 386, 223 P. 2d 862, 21 A.L.R. 2d 1206.

* * *

" . . . '(I)t is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed. *Joyner v. Utterback,* 196 Iowa 1040, 195 N.W. 594. As stated in *Rodgers v. Commonwealth,* 197 Va. 527, 90 S.E. 2d 257, 260, "Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis." ' " *See also State v. Mobley,* 273 N.C. 471, 160 S.E. 2d 334 (1968).

In performing the autopsy, Dr. Thompson took a sample of deceased's blood and placed it in a container addressed to the State medical examiner's laboratory in Chapel Hill. He then placed the container in a rack to be mailed. He did not know whether it was sent by U.S. mail or, if so, whether it was sent as first, second, or third class mail. He did not perform any tests upon the blood and did not know who had performed the tests or what procedure was used in examining it. He was able only to testify that a few days after placing the blood in the rack to be mailed he received a report with the name of Clarence Blackwell on it stating the result of the laboratory work which detected the presence of ethanol in the blood.

The exclusion of the testimony of Dr. Thompson regarding the result of the laboratory test, under the facts of this case, was proper. There was no evidence that would lay a sufficient foundation for the introduction of Dr. Thompson's testimony, and the documents themselves were not offered into evidence. Further, since there was no evidence tending to show self-defense, we question whether the alcohol content of the victim's blood was material. Since neither the toxicology report nor the autopsy report was offered into evidence, we do not pass upon their admissibility. This assignment is overruled.

[2] When the State called Alvin Mitchell Register to testify, defendant objected on the ground that Register was not included in a witness list furnished to defense counsel during jury *voir dire.* The trial judge overruled this objection and permitted Register to testify. In *State v. Hoffman,* 281 N.C. 727, 190 S.E. 2d 842 (1972), we held that in the absence of a statute

requiring it, defendant has no right to a list of the witnesses which the State may call. In this jurisdiction, we have no such statute. In fact, the General Assembly, in the passage of G.S. 15A-903 (which defines certain information which is subject to discovery by a defendant), expressly deleted such a provision from the proposed draft of the statute. *See Thompson, Subchapter IX Pretrial Procedure,* 10 Wake Forest L. Rev. 499, 502-04 (1974). The action of the trial judge in permitting a witness to testify is not reviewable on appeal in the absence of an abuse of discretion. *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336 (1972). *See also State v. Carter,* 289 N.C. 35, 220 S.E. 2d 313 (1975) ; *State v. Spaulding,* 288 N.C. 397, 219 S.E. 2d 178 (1975) ; *State v. Lampkins,* 286 N.C. 497, 212 S.E. 2d 106 (1975).

In instant case, we find no abuse of discretion in the trial judge's ruling which permitted Register to testify. If defendant was unable to proceed, he could have moved for a continuance. *State v. Hoffman, supra.* While it would have been better practice to question the members of the jury as to any relationship with Register at the time he was called to testify, we do not feel that under the facts of this case defendant suffered any prejudice from the omission of this inquiry nor in the admission of the testimony. As was stated in *State v. Hoffman, supra,* at 735, 190 S.E. 2d at 848, "a defendant is not legally prejudiced merely because the State proves its case against him." This assignment is overruled.

**[4]** Witness Register testified that he had known defendant and Carolyn Blackwell for a number of years and that on several occasions prior to 3 May 1973 defendant had called Carolyn from a telephone located in his place of business. On 3 May 1973, at approximately 3:00 p.m., defendant came to his place of business and again called Carolyn. Register testified that he heard defendant tell Carolyn that "he was going to kill somebody if he kept his mess up." Register further testified that he knew who defendant was talking about, and that he told defendant that he was going to get himself into more trouble than he could get out of. Defendant replied, "I'll get out of it."

After Register's testimony, James E. Shaw, a State investigator, testified that subsequent to 3 May 1973 he talked with the witness Register. At that time, Register stated that he had overheard the conversation defendant had with Carolyn Black-

well on 3 May 1973. Register further told Shaw that in the conversation defendant stated to Carolyn that he was going to kill Clarence Blackwell. Defendant objected to this testimony. The court overruled the objection, but instructed the jury: ". . . I instruct you that this answer now to be given by the witness is not substantive or direct evidence. It is received for the purpose for corroboration of the witness Mitchell Register. It is for you, alone, to determine if it does so. To corroborate means to strengthen or support."

Defendant contends that the admission of the testimony of witness Shaw for the purpose of corroborating the testimony of Register was error because Shaw's testimony did not corroborate that of Register.

[3] The admissibility of prior consistent statements of the witness to strengthen his credibility has been reaffirmed by this Court in many cases. 1 Stansbury, N. C. Evidence § 51 (Brandis rev. 1973), and cases cited therein. In *Lorbacher v. Talley,* 256 N.C. 258, 260, 123 S.E. 2d 477, 479 (1962), Justice Bobbitt (later Chief Justice) quoted with approval:

> "As stated by *Smith, C.J.,* in *Jones v. Jones,* 80 N.C. 246, 250: 'In whatever way the credit of the witness may be impaired, it may be restored or strengthened by this [proof of prior consistent statements] or any other proper evidence tending to insure confidence in his veracity and in the truthfulness of his testimony.' *Bowman v. Blankenship,* 165 N.C. 519, 81 S.E. 2d 746; *Brown v. Loftis,* 226 N.C. 762, 764, 40 S.E. 2d 421; Stansbury, *op. cit.* § 50. . . . "

Such previously consistent statements, however, are admissible only when they are in fact consistent with the witness's testimony. *State v. Patterson,* 288 N.C. 553, 220 S.E. 2d 600 (1975); *State v. Bagley,* 229 N.C. 723, 51 S.E. 2d 298 (1949); *State v. Melvin,* 194 N.C. 394, 139 S.E. 762 (1927); 1 Stansbury, N. C. Evidence § 52 (Brandis rev. 1973).

If the previous statements offered in corroboration are generally consistent with the witness's testimony, slight variations between them will not render the statements inadmissible. Such variations affect only the credibility of the evidence which is always for the jury. *State v. Patterson, supra; State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972); *State v. Norris,* 264 N.C. 470, 141 S.E. 2d 869 (1965); *State v. Case,* 253 N.C. 130, 116

S.E. 2d 429 (1960). Further, broadside objections to corroborative testimony will not generally be sustained if any portion of such testimony is competent. Rather, it is the duty of the objecting party to call to the attention of the trial court the objectionable part. *State v. Tinsley,* 283 N.C. 564, 196 S.E. 2d 746 (1973); *State v. Brooks,* 260 N.C. 186, 132 S.E. 2d 354 (1963).

[4]  Applying these principles to the evidence in this case, we hold that it was not prejudicial error to overrule defendant's objections to the testimony of the witness Shaw. Register testified, in substance, that he heard defendant tell Carolyn that he was going to kill somebody and that he knew who defendant was talking about. Shaw testified that Register told him that he heard defendant tell Carolyn that he was going to kill Clarence Blackwell. The testimony of Shaw tended to corroborate that of Register, showing that defendant intended to kill someone. It in no way contradicts the testimony of Register and, at least, partially corroborates it. As instructed by the trial judge, it was for the jury to determine if it did corroborate and if it did strengthen or support the testimony of Register. This assignment is overruled.

[5]  The action of the trial court in allowing the testimony of H. L. Wiggins, Alvin Mitchell Register, James E. Shaw and Billy Watson as rebuttal witnesses constitutes the basis for defendant's next assignment of error. Defendant contends that the testimony of these witnesses did not in fact rebut defendant's evidence but would have been properly admissible during the State's case in chief. Conceding this to be true, it was not error to admit the testimony on rebuttal. As stated by Justice Huskins in *State v. Foster,* 284 N.C. 259, 276, 200 S.E. 2d 782, 794-95 (1973):

> "The order of proof is a rule of practice resting in the sound discretion of the trial court. *State v. Thomas,* 244 N.C. 212, 93 S.E. 2d 63 (1956). 'The court, to attain the ends of justice, may in its discretion allow the examination of witnesses at any stage of the trial.' *State v. King,* 84 N.C. 737 (1881). The great weight of authority holds that 'the admission in a criminal prosecution of evidence as a part of the rebuttal, when such evidence would have been properly admissible in chief, rests in the sound discretion of the trial judge and will not be interfered with in the absence of gross abuse of that discretion.' 53 Am. Jur.,

State v. Britt

Trial, § 129. *Accord, State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972) ; *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972)."

No gross abuse of discretion appears. Accordingly, we overrule this assignment.

Defendant next assigns as error certain portions of the district attorney's argument to the jury. Under G.S. 84-14, an attorney may argue "the whole case as well of law as of fact . . . to the jury." Counsel is given wide latitude to argue the facts and all reasonable inferences which may be drawn therefrom, together with the relevant law, in presenting the case to the jury. *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975) ; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974) ; 4 Strong, N. C. Index 3d, Criminal Law § 102.1 (1976). The trial court is required, upon objection, to censor remarks either not warranted by the law or facts or made only to prejudice or mislead the jury. *State v. Monk, supra; State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6 (1974). The conduct of the arguments of counsel is left to the sound discretion of the trial judge. In order for defendant to be granted a new trial, the error must be sufficiently grave that it is prejudicial. Ordinarily, an objection to the arguments by counsel must be made before verdict, since only when the impropriety is gross is the trial court required to correct the abuse *ex mero motu. See State v. Monk, supra; State v. Noell, supra.*

In instant case, after the district attorney's argument, the following exchange took place:

"COURT: Now that the jury is gone and absent from the Courtroom, is [sic] there any specific complaints by counsel for the defendant to counsel for the State [sic] arguments to the jury?

"MR. DIEHL: With the exception to the position to which Mr. Britt took and to which I objected, there is [sic] none."

The portion of the argument to which defense counsel objected is not raised on appeal.

[6] The first portion of the argument to which defendant objects deals with the statement that defendant is a "cold-blooded, deliberate murderer, regardless of what your decision in this

case is." Later, the prosecutor stated that defendant is "guilty as sin and I'm asking you to put him out of the shooting business." In 23A C.J.S., Criminal Law § 1104, it is stated:

> "As a general rule, it is improper for the prosecuting attorney to express his personal opinion or belief in the guilt of the accused, unless it is apparent that such opinion is based solely on the evidence, and not on any reasons or information outside the evidence."

In instant case, the district attorney made the comments upon defendant's guilt after reciting the evidence introduced by the State which he felt supported the conclusions respecting defendant's guilt. There is no indication that the district attorney was traveling outside the record and it would appear that his opinion was based solely upon evidence from which his inferences and conclusions could legitimately be inferred. *See also State v. Britt,* 288 N.C. 699, 220 S.E. 2d 283 (1975); *State v. Wortham,* 287 N.C. 541, 215 S.E. 2d 131 (1975).

Defendant further contends that the trial court should have, *ex mero motu,* corrected an alleged misstatement of the law of second degree murder made by the district attorney. The record fails to disclose any misstatement of the law by the district attorney. Furthermore, the trial judge fully and properly instructed the jury upon the law applicable to the case.

[7] Defendant further contends that the district attorney improperly argued self-defense to the jury after having been instructed by the trial judge not to do so. In his argument, the district attorney stated:

> "Now, you won't be charged, I think, by the Court in this case with another body of law known as self-defense, because it's not even here. This man was shot in the back. If that is not cold-blooded, deliberate murder, I don't know what it is. You don't even get the opportunity to consider self-defense in this particular case. It's not even here."

It is clear that the district attorney was explaining that under the law applicable to the case self-defense was not an issue. This he could properly do. *State v. Monk, supra,* and cases cited therein.

Defendant also assails the statement by the district attorney that only jurors may "fail to bring criminals to justice in

our system." Here, the district attorney was simply explaining how our legal system works. We do not see how this could be prejudicial to defendant.

We have examined the entire argument by the district attorney and are unable to locate any impropriety sufficient to warrant a new trial. Accordingly, all assignments addressed to the district attorney's argument are overruled.

[8] Defendant contends that prejudicial error was committed when the district attorney was permitted to ask certain questions which defendant insists were leading. A leading question is generally defined as one which suggests the desired response and may frequently be answered yes or no. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974) ; 1 Stansbury, N. C. Evidence § 31 (Brandis rev. 1973). However, simply because a question may be answered yes or no does not make it leading, unless it also suggests the proper response. *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973). It is within the sound discretion of the trial judge to allow counsel to use leading questions; and in the absence of an abuse of that discretion, the judge's ruling will not be disturbed on appeal. *State v. Greene, supra;* 4 Strong, N. C. Index 3d, Criminal Law § 87.1 (1976), and the plethora of cases cited therein. In ruling upon whether counsel may be permitted to lead a witness, the trial judge is guided by the statement in *State v. Greene, supra,* at 492-93, 206 S.E. 2d at 236 :

> "[C]ounsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. [Citations omitted.]"

**[9]**   In instant case, defendant objected to numerous questions propounded to David Blackwell. David, thirteen years of age, was the son of the deceased and an eyewitness to the shooting of his father. From the record, it appears that the questions were necessary to enable the district attorney to elicit from the witness the facts of the case. In no instance did the district attorney suggest the proper response. Further, few, if any, of the questions could be answered by a yes or no response. For example, defendant excepts to the following exchange:

"Q. (By Mr. Britt) : All right. Do you know whether or not your mother was awake or asleep when you went to sleep?

MR. DIEHL: Objection.

THE COURT: Overruled. He may answer if he knows."

Accordingly, due to the youth of the witness, the trial judge did not abuse his discretion in permitting leading questions to be used with respect to David Blackwell.

The remainder of the exceptions relate to questions propounded to witnesses Watson, Register and Shaw. With respect to witnesses Watson and Shaw, it is obvious that the district attorney was directing the attention of the witness "to the subject matter at hand without suggesting answers." The questions propounded to Register did not suggest the desired response and did not put any facts into evidence. We find no abuse of the trial judge's discretion in overruling defendant's objections and thus find no merit in these assignments.

When David Blackwell was offered as a witness, the following transpired:

"MR. BRITT: David Blackwell, come around and be sworn, please.

Your Honor want this child sworn?

THE COURT: Yes sir."

Defendant made no objection to the statement of the district attorney and did not request an instruction that the jury disregard it. We do not feel that the remark is sufficient to warrant a new trial. Defendant had the opportunity to object to the statement and request that the jury be instructed to dis-

regard it. Further, he cross-examined the witness and could have probed the witness's propensity for truth and veracity at this time. Defendant did neither. This assignment is overruled.

[10] Defendant contends that he was denied due process of law because the State lost the knife with which deceased had stabbed defendant. From the record, it appears that the knife was lost when the Robeson County Sheriff's Department was moved from the old courthouse into new quarters. At no time during trial did defendant ever raise the issue of the loss of the knife, *see State v. Parks,* 290 N.C. 748, 228 S.E. 2d 248 (1976), and it is difficult to ascertain how it prejudices his case. Defendant cross-examined the witnesses who saw the knife on the evening of the murder—David Blackwell and Deputy Sheriff Carl Herring. During cross-examination, defendant could have elicited any information deemed necessary regarding the size, shape or type of the knife. Further, it is unclear of what relevance the knife would have been in this case, since self-defense was not an issue. Conceding, *arguendo,* that the loss of the knife was error, we hold that under the circumstances, the fact that the knife was not available is harmless error beyond a reasonable doubt. *See State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972). This assignment is overruled.

[11] Defendant further contends that the district attorney, Joe Freeman Britt, should have been removed from the prosecution of this case and that the failure of the judge to remove Mr. Britt denied defendant due process of law. Defendant bases this contention upon the fact that this is the fourth trial for this offense by the same district attorney, and the fact that this Court reversed the conviction of defendant for over-zealous conduct on the part of the district attorney in *State v. Britt, supra.* In *State v. Westbrook,* 279 N.C. 18, 36-37, 181 S.E. 2d 572, 583 (1971), we stated:

> "The prosecution of one charged with a criminal offense is an adversary proceeding. The prosecuting attorney, whether the solicitor or privately employed counsel, represents the State. It is not only his right, but his duty, to present the State's case and to argue for and to seek to obtain the State's objective in the proceeding. That objective is not conviction of the defendant regardless of guilt, not punishment disproportionate to the offense or contrary to

the State's policy. It is the conviction of the guilty, the acquittal of the innocent and punishment of the guilty, appropriate to the circumstances, in the interest of the future protection of society. In the discharge of his duties the prosecuting attorney is not required to be, and should not be, neutral. He is not the judge, but the advocate of the State's interest in the matter at hand." *See also State v. Best,* 280 N.C. 413, 186 S.E. 2d 1 (1972).

In instant case, the prosecutor was acting as the advocate of the State's interest. He was, at all times, seeking to convict and punish the guilty or seeking acquittal of the innocent. Although we do not condone the actions of the district attorney in the prior trial, wherein defendant's conviction was reversed, we do not feel that those actions in the past are sufficient or of such a nature as to require his removal from the prosecution of this trial. There has been no showing of misconduct in this trial. There has been no evidence that the prosecutor has any conflict of interest, *e.g.,* prior representation of defendant; nor that the prosecutor has any self-interest in obtaining the conviction of defendant, *e.g.,* revenge; nor that the prosecutor has any interest adverse to that of protecting the State. *See Ganger v. Peyton,* 379 F. 2d 709 (4th Cir. 1967) ; *Farmer v. Cox,* 308 F. Supp. 914 (W.D. Va., 1970) ; *State v. Britton,* 203 S.E. 2d 462 (W.Va. 1974) ; *May v. Commonwealth,* 285 S.W. 2d 160 (Ky. App. 1955). *See generally* 63 Am. Jur. 2d, Prosecuting Attorneys § 29 (1972). Accordingly, we find that there was no denial of fairness in permitting Mr. Britt to prosecute defendant such as would constitute a denial of due process. This assignment is overruled.

Defendant next assigns as error the trial court's denial of his motion to dismiss on the grounds of double jeopardy and the failure of the State to afford him a speedy trial. The history of this case may be summarized as follows:

1. The defendant was charged in a bill of indictment with the first degree murder of Clarence Blackwell committed on 3 May 1973.

2. The defendant's first trial began during the month of August 1973 and ended in a mistrial.

3. The defendant was tried and convicted at the 4 September 1973 Session of Criminal Superior Court.

4. On 15 May 1974, the Supreme Court of North Carolina awarded the defendant a new trial.

5. The defendant was again tried and convicted at the 16 September 1974 Session of Robeson County Superior Court.

6. The defendant was awarded a new trial by the North Carolina Supreme Court on 17 December 1975.

7. The defendant was tried and convicted at the 3 May 1976 Session of Bladen County Superior Court; the case having been moved from Robeson County to Bladen County for trial upon defendant's motion for change of venue.

[12] At the first trial, the presiding judge made an impromptu remark indicating that one of the State's witnesses had testified truthfully. The next day it was learned that a man had approached a juror in the case and asked him to "[g]o easy on Jimmy. You know Jimmy takes care of his friends and if he likes you, he will do anything in the world for you." Based upon these two incidents and *upon motion of defendant,* the presiding judge declared a mistrial. An order of mistrial in a capital case will not support a plea of former jeopardy if the mistrial is entered upon defendant's motion. *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243 (1954); *State v. Dry,* 152 N.C. 813, 67 S.E. 1000 (1910); *State v. Davis,* 80 N.C. 384 (1879).

[13] On two appeals by defendant in this case, *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974), and *State v. Britt, supra,* defendant was awarded new trials for errors that occurred during the trials. In *State v. Stafford,* 274 N.C. 519, 531-32, 164 S.E. 2d 371, 380 (1968), Justice Sharp (now Chief Justice) stated: "All courts agree that when a defendant seeks a new trial by appealing his conviction he waives his protection against reprosecution." She then quoted with approval from *Ball v. United States,* 163 U.S. 662, 672, 41 L.Ed. 300, 303, 16 S.Ct. 1192, 1195 (1896):

> " '[I]t is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted.' "

Defendant's assignments based on double jeopardy are overruled.

[14] Defendant further contends that he was denied a speedy trial.

> " . . . Whether defendant has been denied the right to a speedy trial is a matter to be determined by the trial judge in light of the circumstances of each case. The accused has the burden of showing that the delay was due to the State's wilfulness or neglect. Unavoidable delays and delays caused or requested by defendant do not violate his right to a speedy trial. . . . " *State v. Spencer,* 281 N.C. 121, 124, 187 S.E. 2d 779, 781 (1972). *See also State v. Ball,* 277 N.C. 714, 178 S.E. 2d 377 (1971) ; *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965).

The constitutional right to a speedy trial prohibits arbitrary and oppressive delays by the prosecution. *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969).

The history of this case as set out above shows that the State has acted swiftly in trying to bring this defendant to justice. The delays were caused by defendant's appeals, not by any arbitrary or oppressive delay by the prosecution. This assignment is overruled.

[15] On cross-examination, counsel for defendant attempted to question David Blackwell, age ten at the time of the murder, concerning actions of his deceased father on occasions prior to 3 May 1973. These questions pertained to the intoxication of the deceased on prior visits to the home of Carolyn Blackwell and to his use of a pistol on such prior occasions. These questions were not related to anything which occurred on or near 3 May 1973 (the date on which Blackwell was killed). The trial court sustained the State's objections to these questions and defendant assigns this as error.

By this attempted cross-examination, defendant's counsel was seeking to go far afield by showing the conduct of the deceased toward his wife on occasions when defendant was not present and which occurred before the events of 3 May 1973. The scope of cross-examination rests largely in the discretion of the trial judge. He hears all the witnesses, observes their demeanor, knows the background of the case, and is in a favorable position to control the legitimate limits of cross-examination. The appellate court reviews a cold record. The trial court, because of its favored position, should have wide discretion in

the control of the trial. Its rulings should not be disturbed except where prejudicial error is disclosed. *State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875 (1969). "The limits of legitimate cross-examination are largely within the discretion of the trial judge, and his ruling thereon will not be held for error in the absence of showing that the verdict was improperly influenced thereby." *State v. Edwards,* 228 N.C. 153, 154, 44 S.E. 2d 725, 726 (1947). *See also State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970). Here, no such showing appears. This assignment is overruled.

On substantially similar evidence, three juries have been convinced beyond a reasonable doubt that defendant was guilty of the first degree murder of Clarence Blackwell. In defendant's fourth trial, now under review, we find no prejudicial error and the verdict must be upheld.

[16] However, for the reasons stated in *State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97 (1976), the death sentence must be vacated and a sentence of life imprisonment imposed in lieu thereof. Accordingly, the death sentence is hereby vacated and this case is remanded to the Superior Court of Bladen County with the following directions: (1) The presiding judge, without requiring the presence of defendant, shall enter a judgment imposing life imprisonment for the murder of which defendant has been convicted; and (2) in accordance with this judgment the clerk of the superior court shall issue a commitment in substitution of the commitment heretofore issued. It is further ordered that the clerk furnish to defendant and his attorney a copy of the judgment and commitment as revised in accordance with this opinion.

No error in the verdict.

Death sentence vacated; life sentence substituted.