UNITED STATES of America

v.

Mary Sue HUBBARD et al.

Crim. No. 78–401.

United States District Court,
District of Columbia.

Sept. 13, 1979.

See also, D.C., 493 F.Supp. 202.

Carl S. Rauh, U. S. Atty., Raymond Banoun, Judith Hetherton, Timothy J. Reardon, Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., for the United States.

Leonard B. Boudin, Rabinowitz, Boudin & Standard, Michael Lee Hertzberg, New York City, for defendant Hubbard.

. Philip J. Hirschkop, John D. Grad, Leonard S. Rubenstein, Hirschkop & Grad, P. C., Alexandria, Va., for defendants Heldt and Snider.

Roger E. Zuckerman, Roger C. Spaeder, Lawrence A. Katz, Richard A. Stanley, Wendy K. Manz, Zuckerman, Spaeder & Taylor, Washington, D. C., for defendants Willardson and Weigand.

Michael Nussbaum, James Davenport, Ronald G. Precup, Nussbaum & Owen, Washington, D. C., for defendants Hermann and Raymond.

John Kenneth Zwerling, Jonathan Shapiro, Zwerling & Shapiro, Alexandria, Va., for defendant Wolfe.

Leonard J. Koenick, Washington, D. C., for defendant Thomas.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

Before the Court at this time are two motions filed by the defendants which seek the disqualification of counsel for the government in this case. First, the defend-

ants have moved to disqualify the entire Office of the United States Attorney for the District of Columbia from the prosecution of this case. It is the defendants' contention that the Office's status as the alleged "victim" of the crimes charged in the indictment is a disqualifying interest in the prosecution. Second, the defendants move for the removal of Assistant United States Attorney Steven C. Tabackman from the prosecution of this case on the ground that he was once employed by a law firm representing certain of the defendants in this case. For the reasons that follow, both motions are denied.

█ To an extent, there is a relationship between the charges in the indictment and the Office of the United States Attorney for the District of Columbia. However, the Court disagrees with the defendants' characterization of both the extent and the significance of that relationship.

The indictment charges certain of the defendants with burglaries and thefts from an office of an Assistant United States Attorney for the District of Columbia who is not in any way involved in the prosecution of this case. Besides this limited relationship between the Office and the allegations in the indictment, the defendants claim that the Assistant United States Attorneys prosecuting this case are themselves victims of certain of the offenses charged in the indictment. For example, the defendants claim that the prosecutors are victims of Count Twenty-three of the indictment because it charges certain of the defendants with developing a plan to deceive the Assistant United States Attorneys investigating this case. In fact, Count Twenty-three charges the defendants with a conspiracy to obstruct justice. The victims of such a charge may include, to a limited extent, members of the United States Attorney's Office for the District of Columbia. In a sense, the victim of such a charge is our entire system of justice. Nonetheless, such limited victimization does not constitute a disqualifying interest. If the law was otherwise, no one employed in the criminal justice system would be free to prosecute charges of obstruction of justice.

The defendants also contend that the Office is the victim of the allegedly false statements made by one of the defendants to the Grand Jury. The fact that an Assistant United States Attorney was questioning the defendant when the allegedly false statements were made in no way suggests that the Office or the individual propounding the questions has a disqualifying interest in the outcome of the case.

The only meaningful connection between the Office and this prosecution is the fact that the indictment alleges that an office of an Assistant United States Attorney, who is not involved as a prosecutor in this case, was burglarized by certain of the defendants. It is the defendants' contention that this is a disqualifying interest in the prosecution. In support of their position, the defendants rely on four cases: *Ganger v. Peyton*, 379 F.2d 709 (4th Cir. 1967); *People v. Superior Court*, 19 Cal.3d 255, 137 Cal. Rptr. 476, 561 P.2d 1164 (Cal.1977); *May v. Commonwealth*, 285 S.W.2d 160 (Ky.1955); and *State v. Jones*, 268 S.W. 83 (Mo.1924). A short review of the facts in each of these cases illustrates that they are irrelevant to the matter before the Court.

In *Ganger v. Peyton, supra*, the United States Court of Appeals for the Fourth Circuit reversed the state conviction of a man for assault because he was prosecuted by an attorney who, at the time, also was representing the defendant's wife in a divorce proceeding growing out of the same assault. *Id.* at 711. In fact, there was some suggestion that the prosecutor had offered to drop the criminal charges if the defendant would agree to a property settlement with his wife. *Id.* at 711–12. The Court recognized that the prosecutor had an interest in the civil litigation including the size of his fee. *Id.* at 713. Thus, the court held that the prosecutor was improperly torn between his duty to serve his two clients' interests: the wife's personal and financial interest, and the state's interest in seeing justice done. *Id.* at 714. Therefore, the conviction was set aside for violating due process and fundamental fairness. *Id.*

In *People v. Superior Court, supra*, the Supreme Court of California denied the request for a writ of mandamus to force the trial judge not to order the recusal of a district attorney. *Id.* 137 Cal.Rptr. at 478, 561 P.2d at 1166. The court found that the trial judge did not abuse his discretion in ordering the recusal of the district attorney when the mother of a homicide victim was employed as a discovery clerk and was assigned to the very office in which the prosecution of the case was being handled. *Id.* at 1167. Furthermore, the prosecution's theory of the case involved proof that the victim's wife hired the murderer to kill her husband because of a protracted dispute over the custody of their child. *Id.* Thus, the victim's mother not only was emotionally involved with the case, but she was also scheduled to be a material witness at the trial. *Id.* Moreover, she stood to gain custody of the child if the defendant was convicted. *Id.* In fact, a contested guardianship proceeding was pending between the two women. *Id.* This dispute arose after the defendant was arrested and the child was placed in the grandmother's custody in derogation of his mother's wishes. *Id.* Indeed, there was evidence that his placement occurred after the police had conferred with the district attorney's office. *Id.* The court held that the trial court, in the circumstances presented, did not abuse its discretion and could find that the prosecutor might appear to have an emotional stake in the case of the sort that could disturb his exercise of impartial judgment in pretrial and trial proceedings. *Id.* at 1174.

In *May v. Commonwealth, supra*, the Court of Appeals of Kentucky reversed the imposition of a $1,000.00 fine and conviction for assault and battery against a Commonwealth's attorney. The ground for the reversal was certain inflammatory remarks the prosecutor had made to the jury during his final argument. *Id.* at 164. The victim of the assault and battery also served as the prosecutor in the case. The court held that "this dual capacity . . . was perhaps permissible." *Id.* at 162.

In *State v. Jones, supra*, the Supreme Court of Missouri upheld the appointment by the court of a special prosecutor when the prosecutor had been disqualified because of his interest in the case. *Id.* at 85. In fact, the prosecuting attorney and the defendant were involved in an automobile accident after which the prosecuting attorney filed an information charging the defendant with operating his car in a state of intoxication. *Id.*

In this case, none of the Assistant United States Attorneys actually prosecuting the case has been a victim of any of the charges in the indictment. Further, none of the government attorneys has shown any special emotional stake in the outcome of the case. Accordingly, the cases relied on by the defendants are inapposite.

■ If any member of a law firm has an interest in the outcome of a case, the entire firm is disqualified. *See* ABA Opinion 296 (1959). However, this rule does not extend to encompass an Office of a United States Attorney. A United States Attorney's Office is unique in that it does not represent ordinary parties but the sovereign whose obligation is to govern impartially. *See Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1934). Furthermore, the members of an Office of a United States Attorney have no interest in the success of the litigation of their associates as do members of a private firm. Therefore, the fact that one member of the Office may have a disqualifying interest in the case does not preclude the entire Office from handling the case. Accordingly, the Court finds that disqualification of the Office of the United States Attorney for the District of Columbia would not be appropriate in the facts and circumstances of this case.

■ The defendants seek an order removing Assistant United States Attorney Steven C. Tabackman from the prosecution on the ground that he was employed by the law firm of Nussbaum & Owen, which represents two of the defendants, during a period in which matters material to this prosecution were pending within that law firm. The defendants expressly do not as-

sert that Tabackman, during his employment, was privy to the documents, legal memoranda, strategy discussions, or witness interviews concerning the case; nor do they accuse Tabackman of using knowledge acquired during his private employment in opposing the defendants' motions. Defendants' Motion to Remove Assistant United States Attorney Steven C. Tabackman from the Prosecution at 4 (May 14, 1979). Instead, the defendants rely on Canon 9 of the Code of Professional Responsibility which commands the avoidance of the appearance of impropriety. A short review of the undisputed facts of this matter illustrates that the continuation of Tabackman in the prosecution of this case would not result in any improper appearance.

Tabackman was employed by Nussbaum & Owen for a total of twenty-six hours over a six-day period. He worked on a single civil case which was unrelated to this action. His employment with the firm ended before the firm was retained by the Church of Scientology or the defendants in this action. Accordingly, the Court finds that Tabackman's continued participation in the prosecution does not present the appearance of impropriety.