PER CURIAM.
Jonathan Rashad Jones petitions for a ■writ of prohibition following the denial of his motion to dismiss. He argues that his prosecution for possession of a firearm by a delinquent is barred by collateral estop-pel as embodied in the Double Jeopardy Clause of the federal and state constitutions. U.S. Const, amend. V; Art. I, § 9, Fla. Const. Having carefully reviewed the record of the trial on the related charges for which Jones was acquitted, we conclude that the jury necessarily determined that the testimony of the state’s key witness was not credible as to the events on the date in question. Accordingly, the state is precluded from again presenting this testimony in order to establish the possession offense. We grant the petition.

Factual Background

On January 2, 2012, a grocery store owner was shot and killed during a robbery. The incident was captured on surveillance video. It was undisputed that Corey Graham, Jr., a close friend of petitioner, had confessed to having committed the robbery and murder. Graham Jr.’s confession to his father was captured on video at the police station. In addition, the record indicates that the surveillance video depicts a distinctive tattoo on the hand of the masked robber — which allegedly matches the tattoos of his mother’s name that Graham Jr. has on his hands.
Based on events that allegedly occurred days later, on January 5, 2012, the state charged Jones with four counts: (1) Accessory After the Fact to Robbery with a Firearm and First Degree Murder; (2) Tampering with or Fabricating Physical Evidence; (3) Tampering with a Witness, Victim or Informant; and (4) Delinquent in Possession of a Weapon/Firearm/Ammunition. Count 4 was severed, and Jones proceeded to trial on counts 1, 2, and 3.
The parties stipulated at trial that a robbery and murder had occurred. The state’s theory against Jones was that the gun that was used in the robbery belonged to Jones and that, on January 5, 2012, Jones had gone to Graham’s home in order to retrieve the gun and dispose of it. To establish the offenses against Jones, the State relied primarily on the testimony of Graham’s mother, Errica Hearns. The state presented no other witness to the events that allegedly occurred on January 5, 2012.
Hearns testified that she had found a handgun in a drawer in Graham’s room and had taken possession of it. On January 4, 2012, Graham asked Hearns for the gun, and on January 5, 2012, he again asked her to give him the gun but with more urgency. Hearns testified that Graham was on the phone while asking for the gun and indicated that he needed to return the gun to his friend, his “homeboy,” as soon as possible. Hearns testified that she saw Jones, who was also on the phone, outside by her door. Jones was telling Graham to get the gun back.
According to her testimony at trial, Hearns heard Jones through the slightly open door and open windows, and over Graham’s phone, threaten to “fuck up” Graham and his family if he did not get the gun back. After hearing this threat, she put the gun in a plastic bag and gave it to Graham who went outside and gave it to *137 Jones. She allegedly saw Jones get into the passenger seat of Graham’s car and saw the bag with the gun between Jones’ legs. Graham then drove away with Jones. Graham returned home about fifteen or twenty minutes later without Jones. Hearns never saw the firearm again, and police never recovered the firearm.
The defense argued vehemently at trial that Hearns, and Graham’s biological father, Corey Graham, Sr., had fabricated the account of Jones’ threats believing that it would benefit their son. According to police, in the first hour of her interview, Hearns had not mentioned anything about Jones having made any threats. It was only after Graham Sr. entered the room and spoke with Hearns that Hearns told police about the alleged threats. The video of Hearns’ interview revealed that Graham Sr. urged her to tell police about the threats in hopes it would assist their son in sentencing.
The defense established in cross-examination that Hearns’ testimony at trial was inconsistent with the interview she had with police on January 9, 2012, just days after the incident. In her interview with police, Hearns stated that Graham was holding the gun and tried to place it in a “little bag” before “they” put it in the car on the floor of the passenger seat. This contrasts with her trial testimony that she saw Graham give the bag with the gun to Jones and that she saw Jones with the bag between his legs in the ear. On redirect, Hearns testified that in the interview she meant to say that Jones was holding the gun.
The defense showed that the cellular phone records did not corroborate Hearns’ account of events. For example, although Hearns testified that Graham was on the phone with Jones for about fifteen minutes during the time Graham was asking for the gun back and when Jones allegedly made the threats, the phone records showed only two brief calls between Jones and Graham — for a total of about fifty-two seconds-during the period in question. The phone records also contradicted Hearns’ testimony that she had called Graham Sr. after finding the gun and that she was on the phone with Graham Sr. during the time that her son was asking for the gun back. Contrary to Hearns’ testimony that she spoke with Graham Sr. after giving the gun to her son, the phone records showed no calls with Graham Sr. on January 5, 2012.
While deliberating the jury asked the following question, “How do we answer element one Accessory After the Fact when Corey Graham Jr., has not been found guilty thru trial?” The court answered the question by repeating the relevant jury instruction on count 1 which required the jury to find that Graham had committed the robbery and murder, not that he had been convicted. The jury then returned a verdict of not guilty on all three counts.
Following the acquittal, the state proceeded with the prosecution of count 4 which charges that Jones, who had allegedly been adjudicated delinquent as a juvenile, unlawfully possessed a firearm on January 5, 2012. The charge is based exclusively on the January 5, 2012, incident allegedly witnessed by Hearns. The trial court denied a defense motion to dismiss this charge on double jeopardy grounds, and this petition follows.

Analysis

A writ of prohibition is a proper remedy to review the denial of a motion to dismiss a prosecution that is barred by double jeopardy. Jackson v. State, 855 So.2d 178, 179 (Fla. 4th DCA 2003) (citing Strawn v. State ex rel. Anderberg, 332 So.2d 601, 602 (Fla.1976)); see also Sher *138 rod v. Franza, 427 So.2d 161, 168 (Fla.1983).
The seminal case of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), holds that the principle of collateral estoppel is embodied in the Double Jeopardy Clause. “Collateral estoppel” means simply that “when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.” Id. at 443.
The principle precludes the government from relitigating certain facts in order to establish the fact of the crime, which includes a redetermination of evidentia-ry facts as well as ultimate facts. United States v. Lee, 622 F.2d 787 (5th Cir.1980). Collateral estoppel may be employed to bar prosecution or argumentation of facts necessarily established in a prior proceeding, or it may be utilized to bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element of the crime presently charged. United States v. DeMarco, 791 F.2d 833 (11th Cir.1986). A necessarily established fact has been held to be one which has been resolved in favor of the defendant at the prior trial and was essential to the conviction in said case. However, as the court said in Ashe, collateral estoppel does not apply if the verdict could be grounded upon an issue other than that which the defendant seeks to foreclose from consideration.
State v. Strong, 593 So.2d 1065, 1067 (Fla. 4th DCA 1992), rev. denied, 602 So.2d 942 (Fla.1992).
The burden is on the defendant to establish that the issue sought to be foreclosed was necessarily decided in the initial trial. Davis v. State, 645 So.2d 66, 67 (Fla. 4th DCA 1994). The Supreme Court of the United States, however, has cautioned against a hypertechnical approach that could eviscerate the collateral estoppel protections of the Fifth Amendment in all cases where a general verdict has been entered.
[ T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to “examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.”
Ashe, 397 U.S. at 444, 90 S.Ct. 1189 (citations omitted).
We have carefully considered the record of the prior trial in this case and conclude that the jury’s verdict necessarily decided that the events of January 5, 2012 did not transpire in the manner testified to by the only witness to the events who testified at trial. The possession of a firearm charge appears to be based solely on Hearns’ testimony that on January 5, 2012, Jones made the threats and took possession of the firearm. Petitioner seeks to foreclose the state from relitigating these facts which were fully litigated and the central focus of the first trial.
The state argues that it is not precluded from litigating the question of whether Jones possessed a firearm because it was not necessary for the jury to determine this fact in the first trial. See Ferguson v. State, 946 So.2d 553, 554 (Fla. 4th DCA 2006) (holding that a possession of a fire *139 arm charge was not precluded where the jury did not have to decide the possession issue in finding the defendant not guilty of attempted first-degree murder in the first trial).
However, in Ferguson, this court recognized that a prior acquittal for essentially the same conduct can in some circumstances bar a subsequent prosecution. Id. at 554 (citing Morris v. State, 869 So.2d 1264 (Fla. 3d DCA 2004)). In Morris, the jury’s acquittal in the first trial necessarily determined that the encounter constituting the alleged robbery did not occur, and the defendant could not be tried based on the allegation that he possessed a firearm during the robbery. 869 So.2d at 1266. Similarly, in Ashe, the jury’s acquittal of the defendant for robbery of a certain victim precluded the state from relitigating whether the defendant had robbed a different victim in the same incident. 397 U.S. at 445-46, 90 S.Ct. 1189. In Davis, the defendant’s acquittal of the aggravated assault, and of the lesser offense of improper exhibition of a firearm, precluded a prosecution for possession of a firearm because the jury’s verdict necessarily determined that the defendant had not possessed a firearm during the incident. 645 So.2d at 68.
In the present case, the trial court denied the motion to dismiss based on the jury’s question about count 1, the accessory after the fact charge. The jury asked, “How do we answer element one Accessory After the Fact when Corey Graham Jr., has not been found guilty thru trial?” Element one of this count required the jury to find that “a first degree murder and robbery were committed by Corey Graham, Jr.” (emphasis supplied). See § 777.03, Fla. Stat. (2011) (setting forth the accessory after the fact offense). The court answered the jury’s question by repeating this aspect of the jury instruction — which did not require proof that Graham had been convicted. The court noted that, minutes after answering the question, the jury returned its not guilty verdict.
The court’s reasoning seems to suppose that the jury disregarded its instructions and acquitted the defendant of this charge based on an extraneous fact which was not an element of the offense. This reasoning, which essentially speculates that the jury exercised its pardon power, does not square with the jury’s acquittal on count 2, the tampering with evidence charge. To convict of this count, the jury was instructed that it was required to find two elements: (1) that Jones “knew that a criminal trial or proceeding and or an investigation by a duly constituted prosecuting authority or law enforcement agency of this state was pending”; and (2) that Jones “destroyed, concealed, or removed a handgun with the purpose to impair its availability in the trial proceeding of investigation.” See § 918.13, Fla. Stat. (2011).
The jury acquitted Jones of this charge, as well as the tampering with a witness charge, and essentially determined that the state had failed to prove the incident that constituted the basis for all three of the charges. Allowing the state to again present Hearns’ testimony to prosecute Jones for allegedly possessing a firearm in this same incident would violate the spirit and dictates of Ashe. See also State v. Perkins, 349 So.2d 161, 164 (Fla.1977) (holding that “evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial”). The credibility of Hearns’ testimony was the central feature of the first trial, and the jury’s verdict could not rationally have been grounded on another basis.
The state argues that the acquittal on count 2 could have been grounded on the jury finding that Jones was unaware of the *140 pending investigation. While this suggestion is “possible,” our analysis must be realistic and rational, not speculative. The firearm was never recovered. The murder occurred in the small town of Belle Glade and was widely reported in the media. The state presented evidence of text messages sent and received by petitioner to watch the news. The state presented evidence at trial that Jones was seen on the surveillance video entering the store about eight minutes before the robbery. The state argued at trial that it was “obvious” Jones knew of the robbery investigation and noted that Jones told detectives that he was aware he was on the video. Hearns learned of the robbery on the day it occurred because she saw the activity when she drove by the store. To conclude that the jury based its verdict on a determination that Jones was unaware of the investigation would be unreasonable.
In Gragg v. State, 429 So.2d 1204 (Fla.1983), the Florida Supreme Court appears to have rejected the argument set forth by the state in this case, as well as the reasoning applied by the trial court. In Gragg, the court agreed that the defendant’s prosecution for possession of a firearm was barred by collateral estoppel where the defendant had been acquitted of aggravated battery and assault with a firearm and where the jury had convicted of simple assault. As in this case, the state argued that collateral estoppel did not apply because the question of simple possession was not at issue in the first trial. Id. at 1206. The Florida Supreme Court rejected the suggestion that the possibility of a jury pardon was an appropriate consideration.
Collateral estoppel does not depend on whether there is any evidence to support the view that the jury may have exercised its pardon power. Practically every jury verdict of acquittal is susceptible to such an interpretation. A jury’s verdict may possibly be based upon a defendant’s demeanor or other matters not reflected by the record. For this reason courts should not speculate on whether the jury has reached its verdict through compassion or compromise. In determining whether collateral estoppel applies, a court should limit its inquiry to whether there was a factual basis, rather than an emotional basis, upon which the jury’s verdict could have rested.
Id. at 1206-07. Here, the only rational basis for the jury’s verdict acquitting Jones of counts 1, 2, and 3 is a finding that Jones did not take possession of the firearm during the incident in question.

Conclusion

Under the circumstances of this case, the state is precluded from prosecuting Jones based on Hearns’ testimony regarding the January 5, 2012 incident. Hearns’ credibility regarding her account of this incident was fully litigated, and this issue was the central focus and the only truly disputed issue in the first trial. The jury through its not guilty verdict on all three counts necessarily determined that the state had failed to prove that Jones possessed the firearm during this incident. Requiring Jones to resurrect his defense to this incident would violate double jeopardy.
We grant the petition. The state may proceed in prosecuting the possession of a firearm charge if it has other evidence to establish the offense. Otherwise, if the state lacks sufficient evidence, the prosecution should be dismissed.

Petition granted.

WARNER, CIKLIN and LEVINE, JJ., concur.