# Third District Court of Appeal

## State of Florida

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-73
Lower Tribunal No. 16-10192

_____

**Jonathan Morris,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

A case of original Jurisdiction - Prohibition

Carlos J. Martinez, Public Defender, and Jonathan Greenberg, Assistant Public Defender, for petitioner.

Pamela Jo Bondi, Attorney General, and Natalia Costea and Magaly Rodriguez, Assistant Attorneys General, for respondent.

Before SUAREZ, LAGOA and SALTER, JJ.

SALTER, J.

Jonathan Morris seeks a writ of prohibition to preclude the circuit court from trying him on a severed charge of possessing a firearm as a convicted felon. The firearm charge was count 2 of an information which also charged Morris (in count 1) with second-degree murder with a firearm. Morris had moved for, and been granted, severance of Count 2. Following a jury trial on the murder charge, Count 1, Morris was acquitted.

Morris now contends that the severed possession of a firearm charge involves an issue of fact necessarily determined in the murder trial, such that collateral estoppel and the constitutional guarantee against double jeopardy bar prosecution of the firearm charge. We conclude, however, that the petition must be denied on the basis of a recent decision of the Supreme Court of the United States, <u>Currier v. Virginia</u>, 138 S. Ct. 2144 (2018) ("<u>Currier</u>").

<u>Proceedings in the Circuit Court</u>

The two charges against Morris have been described. The undisputed facts relating to the daylight occurrences on May 15, 2016, at a Miami residential apartment complex are:

- Lamonte Jacobs was shot eleven times in the courtyard of the apartment complex under a tree. Spent nine millimeter cartridges, with no detectable fingerprints, were found near Jacobs' body.

2

- Morris himself was wounded three times in the neck, back, and leg, but survived. After being shot exiting a hallway to the street, Morris was able to climb into a car and escape from the scene. Surveillance cameras yielded a videotape of a third man, allegedly Marquis Dunwoody, shooting Morris. Spent .40 caliber cartridges were found in the area where those shots were fired. The State's ballistics analyst testified that the bullets recovered at the scene were from two different firearms.

- The surveillance camera videotape also showed a fourth man with Dunwoody and using a cellphone when apart from Dunwoody at the time of the incident.

The eyewitness testimony, however, provided disputed and contradictory testimony about the sequence of events and identity of the shooter under the tree where Jacobs' body was found when the police arrived.

The State's theory at the trial of the murder count was that Morris fired the shots that killed Jacobs. A resident of a second-floor apartment at the complex where the shootings took place, Mr. Perez, testified that he heard gunshots and went to his rear window overlooking the rear courtyard. He saw a person shooting a silver-plated handgun with an extended magazine towards a tree (the tree where Jacobs' body was later found), but the branches obscured Perez's view of the shooter's target. The shooter was facing away from Perez, and Perez never

3

had a clear view of the shooter's face. As the shots ended, Perez testified that he saw the shooter tuck the gun into his shorts and flee. Perez thought the shooter was Morris (whom he had seen on occasion at the apartment complex).

Perez then ran to a balcony at the front of his apartment to see if he could see where the shooter was running. When Perez looked down, he saw Morris running away; he did not see a gun on Morris. Perez then heard a second round of shots, this time aimed at Morris as Morris ran away. Perez did not see the second gunman. Perez's description of the shooter did not match what Morris was wearing. Perez described the shooter as wearing a white undershirt and short jeans. Morris was wearing floor-length jeans and a hooded sweater.

Another eyewitness was at the front of the building. She heard a group of shots and took cover. As she rose to run away, she heard a second group of shots being fired at Morris. She saw Morris running away, looking over his shoulder, and looking scared. She testified that she did not see Morris with a gun.

Surveillance cameras captured footage of two men other than Morris approaching the area immediately before the first round of shots. The cameras also captured one of those two men shooting at Morris.

A swab of Morris's hands for gunpowder residue detected one microscopic particle which, the State's criminalist testified, was inconsistent with someone alleged to have fired ten shots in rapid succession.

The jury acquitted Morris of the second-degree murder with a firearm, count 1. The defense then moved to dismiss the possession of a firearm charge, count 2. The court denied the motion because it concluded that the jury could have acquitted Morris of murder while also finding that he was the man that Perez saw shooting the handgun. Morris's petition for prohibition followed.

Analysis—Pre-Currier

In Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court of the United States applied collateral estoppel, flowing from the Fifth Amendment guarantee against double jeopardy, to bar subsequent litigation on another criminal charge when the issues of ultimate fact on that charge have already been determined in a valid final judgment. Ashe has been followed in a consistent line of Florida cases, including Gragg v. State, 429 So. 2d 1204 (Fla. 1983), and State v. Short, 513 So. 2d 679 (Fla. 2d DCA 1987).

> Collateral estoppel may be employed to bar prosecution or argumentation of facts necessarily established in a prior proceeding, or it may be utilized to bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element of the crime presently charged. A necessarily established fact has been held to be one which has been resolved in favor of the defendant at the prior trial and was essential to the conviction in said case.

State v. Strong, 593 So. 2d 1065, 1067 (Fla. 4th DCA 1992).

Collateral estoppel was applied to grant prohibition by this Court in Morris v. State, 869 So. 2d 1264 (Fla. 3d DCA 2004).[1] Morris held that the defendant's

5

first trial disposed of the firearm possession issue. The defendant was charged with armed robbery, grand theft, attempted armed robbery and possession of a firearm by a convicted felon, with the latter charge severed. As in this case, the defense was that the defendant was not the perpetrator, based on the differences in the appearance of the defendant, the victims' description of the robber, and the lack of physical evidence to connect the defendant to the crime. The defendant was acquitted of the armed robbery charge.

In granting prohibition to prevent a trial on the firearm possession charge, this Court concluded that collateral estoppel barred the trial on possession because the only issue at the first trial was whether an armed defendant had robbed the victims. Because the jury found that the defendant was not the robber, the second prosecution – based on the claim that the defendant possessed a firearm during the very same armed robbery of which he was acquitted – was barred. Id. at 1265.

In Jones v. State, 120 So. 3d 135 (Fla. 4th DCA 2013), the court granted a prohibition petition to preclude a trial for possession of a firearm following an acquittal for accessory after the fact to robbery with a firearm and first degree murder. There, as here, there was only one witness whose testimony placed the defendant at the scene. The court concluded that by its acquittal, the jury

---

[1] That case also involved the pending trial of a severed count for possession of a firearm by a convicted felon, but the petitioner was a different Morris.

6

"necessarily determined that the testimony of the state's key witness was not credible as to the events on the date in question." Id. at 136. Hence, the verdict in Jones necessarily decided that the defendant did not have a firearm, contrary to the sole witness's testimony. Id. at 138.

Analysis—Post-Currier

These opinions must be re-examined, however, in light of the United States Supreme Court decision in Currier. The analysis in Currier holds that the defendant's consent to the severance (including a second trial on the severed count) obviates any concern or claim that the second trial violates the Double Jeopardy Clause, receding from Ashe to that extent.

We directed the parties to file supplemental briefs regarding the impact of the opinion in Currier, if any, in this case. Morris has candidly and correctly conceded that "Currier is dispositive as to his Fifth Amendment claim." He argues, however, that the second prosecution of the severed charge would violate his double jeopardy rights under article I, section 9 of the Florida Constitution. Morris contends that Gragg v. State, 429 So. 2d 1204 (Fla. 1983), "remains binding law pursuant to Florida's 'primacy doctrine,' which requires state courts to first look to the Florida Constitution when resolving a claim arising from a fundamental right."

The State responds that the scope of double jeopardy protection is the same in both the United States and Florida Constitutions, citing Dunbar v. State, 89 So. 3d 901, 904 n.2 (Fla. 2012). Further, the State argues that Currier appears to overrule or abrogate previously-controlling Florida Supreme Court precedent (predicated largely on Ashe), particularly Gragg. The State correctly observes that "Gragg does not refer or appear to rely on the Florida Constitution."

Conclusion

Based on the record before us and the decision of the Supreme Court of the United States in Currier, we conclude that Morris's reliance on Ashe, Gragg, and the Florida cases that have followed those authorities, is unavailing. Paraphrasing the majority opinion in Currier and quoted language from the Virginia Court of Appeals decision in the case, "'the avoidance of prosecutorial oppression and overreaching through successive trials' [has] no application here because the charges were severed for [in this case, Morris's] benefit and at his behest." Currier, 138 S. Ct at 2149.

Petition for prohibition denied.

8